## THAYER *v.* HART, Jr., and others.

(*Circuit Court, S. D. New York.* June, 1884.)

**PATENT LAW—PRIOR PATENT—PRIOR INVENTION—BURDEN OF PROOF.**
    Where the defendant, in an infringment suit, proves that he invented the patented device before the date of the plaintiff's application, the burden is transferred to the plaintiff to satisfy the court beyond a reasonable doubt that he first conceived the invention.

In Equity.
*Josiah P. Fitch,* for complainant.
*Frederic H. Betts* and *C. Wyllys Betts,* for defendants.

COXE, J. The complainant is the owner of letters patent No. 202,-673, dated April 23, 1878, for an "improvement in neck-tie shields." The application was filed December 20, 1877. The defendants are owners of letters patent No. 220,610, dated October 14, 1879, for a similar invention. Their application was filed August 28, 1879. Both patents are designed to secure a pin formed with a shoulder, and so constructed that it may be conveniently and firmly attached to a neck-tie shield without using any device for the purpose of fastening except the pin itself. The only difference so far as the pin in question is concerned, irrespective of the method of attaching it, is, that in complainant's device the upper end of the pin is turned away from the point, and in defendant's it is turned towards the point. The principal controversy relates, therefore, to the question of prior invention. The complainant's patent antedating the defendants', it was incumbent upon them to prove beyond a reasonable doubt that theirs was the prior invention. This they have done by proof so positive that the complainant's counsel conceded on the argument that the date of their invention was January 15, 1877; 11 months prior to the filing of the complainant's application. This date being fixed the burden was transferred to the complainant to satisfy the court by proof as convincing as that required of the defendant that his invention preceded theirs. The rule in such cases is very strict. It is so easy to fabricate or color evidence of prior invention and so difficult to contradict it, that proof has been required which does not admit of reasonable doubt. Where interests so vital are at stake, where intervening years have made perfect accuracy well nigh impossible, where an event, not deemed important at the time, has been crowded from the memory and obscured by the ever varying incidents of an active life, it is not difficult to imagine that even an honest man may be led erroneously to persuade himself that the fact accords with his inclination concerning it.

The evidence of prior invention is usually entirely within the control of the party asserting it, and so wide is the opportunity for deception, artifice, or mistake, that the authorities are almost unani-

mous in holding that it must be established by proof clear, positive and unequivocal; nothing must be left to speculation or conjecture.

In *Coffin* v. *Ogden*, 18 Wall. 120, Mr. Justice SWAYNE says:

"The invention or discovery relied upon as a defense, must have been complete, and capable of producing the result sought to be accomplished; and this must be shown by the defendant. The burden of proof rests upon .him, and every reasonable doubt should be resolved against him."

In *Webster Loom Co.* v. *Higgins*, 4 Ban. & A. 88, the court (at page 98) says:

"The burden of proof rests upon the defendants, to show, beyond a fair doubt, the prior knowledge and use set up; but, where they have sustained that burden by showing such knowledge and use prior to the patent, the burden of showing the still prior invention claimed, by at least a fair balance of proof, must rest upon the plaintiff."

In *Wood* v. *Cleveland Rolling-mill Co.* 4 Fish. 550, the court, referring to the witnesses called to establish prior invention, says, at page 559:

"Their imagination is wrought upon by the influences to which their minds are subjected, and beclouds their memory. When the defense is made, it is the duty of courts and juries to give it effect. But such testimony should be weighed with care, and the defense allowed to prevail only where the evidence is such as to leave no room for a reasonable doubt upon the subject."

In *Howe* v. *Underwood*, 1 Fish. 160, Judge SPRAGUE, at page 175, says:

"How invariable is it that after a great invention has been brought before the world, has become known to the public, and put in form to be useful, that people start up in various places and declare that they invented the same thing before. After having seen what has been done, the mind is very apt to blend subsequent information with prior recollections, and confuse them together. Prophecy after the event is easy prophecy."

Within the rule thus established the question to be answered here is: Has complainant satisfied the court beyond a reasonable doubt that he conceived his invention prior to January 15, 1877? After making every allowance for the inexperience of some of complainant's witnesses, several of them being young women called for the first time to the witness stand, it must be said that his evidence is involved in such contradiction, uncertainty and confusion that he has failed to bring himself within the rule above adverted to. The complainant fixes the middle of October, 1876, as the time of his invention. The circumstances which, among others, lead him to do so, are as follows: During his absence at the centennial exhibition in October, on which occasion his wife and child accompanied him, the firm of Hubbs & Klein left an order with his forewoman for five gross of "Chancellor shields" with pins attached. On his return, in order to avoid the expense of purchasing the pins then in the market, he commenced experimenting with a common pin and in connection with Albert M. Smith succeeded in making the patented invention. A shield and pin precisely like the defendants' device, alleged to have been made

shortly after this time, was produced in evidence. In the latter part of the same month or early in November another order for similar shields and pins was filled for the same firm, and also one for Anson Pitcher, of Boston. The pliers and other tools used in bending and fastening the pins and a memorandum book of one of the workwomen in which appears an entry in complainant's handwriting, under date of October 28, 1876, alleged to refer to the "Chancellor shields" in question, were also exhibited to the court.

The witnesses are further enabled to locate the date of the invention by the circumstances,—*First*, that it occurred a short time prior to complainant's removal of his place of business from Walker street to Center street, and very soon after some fans, known as "Centennial fans," were finished. Though these are the salient features, there are several other circumstances which tend to corroborate the complainant in fixing upon October, 1876, as the time when the idea of the patented pin first entered his mind. But the defendants have succeeded in contradicting or casting suspicion upon each one of the principal transactions which the complainant has grouped around his invention as forming the *data* by which he locates the time. It is shown, for instance, that he visited the exhibition at Philadelphia with his wife and child in August and not in October. It must, therefore, be said either that the invention was not immediately after that visit or that it was not in October, and it is difficult to reconcile either conclusion with the other testimony. Being recalled the complainant testified that he again visited Philadelphia in October, but he went alone and was there but a single day. This could hardly have been the occasion referred to by the witness Cordelia White, as her recollection relates to the former rather than the latter visit.

The defendant also offered evidence proving or tending to prove the following facts: That although Hubbs & Klein were associated together in business no partnership between them ever existed; that the October order referred to was never given and no entry thereof appears upon complainant's books for 1876, notwithstanding the fact that it is alleged to have been given in circumstances which would ordinarily require an entry to be made. Indeed, no mention is made in the ledger of 1876 of Hubbs & Klein, either as a firm or as individuals, and there is no entry, either that year or the next, of which it can be positively asserted that reference is made to the patented pin. The books do show, however, that for a year and more after the alleged invention of this cheap and simple device the complainant purchased of the defendant Hart large quantities of a much more expensive pin, and a few days before he bought 25 gross of "barrel pins" and a pair of pliers for attaching them to the shields. There are circumstances which strongly connect these pliers with the pair produced by the complainant.

No satisfactory evidence is offered that the shields sent to Anson Pitcher had pins of any kind attached.

The proof leaves little room for doubt that the removal to Center street did not take place until November, 1877. In addition to complainant's letter pointing to this date, bills emanating from his establishment are produced, dated from Walker street as late as October 13, 1877, and from Center street November 10, 1877. There is certainly a strong presumption, in the absence of direct proof, that in October the complainant was at Walker street and in November at Center street.

These circumstances, taken in connection with the testimony that the invention was conceived just before removing, and that the patented pin was first manufactured after the removal, furnish very persuasive evidence that the invention was in the fall of 1877 instead of the fall of 1876. The witnesses were testifying to events which took place six and seven years before. They certainly are mistaken as to some of them. Why may they not, without any wrongful intent, have mistaken the year also?

It is not thought necessary to enter upon a more extended review of the evidence, which is very voluminous and is discussed with great care and elaboration upon the briefs presented. It is enough to say that no one of the principal circumstances relied on by the complainant is free from perplexity; either its own date is uncertain or there is difficulty in connecting it with the invention. It would be idle to assert that all this does not create the doubt which the authorities hold must be absent from the mind of the court.

The result has been reached without reference to the declarations or admissions of the joint inventor Albert M. Smith, either in writing or otherwise.

It follows that the bill must be dismissed, with costs.