CONSOLIDATED RY. ELECTRIC LIGHTING & EQUIPMENT CO. v.
ADAMS & WESTLAKE CO.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1908. Rehearing Denied May 6, 1908.)

Nos. 1,388, 1,394.

**1. PATENTS—PRIORITY OF INVENTION—BURDEN OF PROOF ON ISSUE.**

The grant of a patent raises a presumption that the patentee was the original inventor of the thing patented, and that the invention was made at the time the application was filed, and one claiming priority of invention has the burden of proving, by evidence which is clear and certain, that the invention was conceived and reduced to practice by another prior to the date of the application. When such proof is made, however, the burden is shifted to the claimant under the patent to establish, if not with equal certainty, at least to the satisfaction of the court, a still earlier date of invention by the patentee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 121.

Priority and continuance of public use of invention as affecting patentability. See notes to Eastman v. Mayor, etc., of City of New York, 69 C. C. A. 646.]

**2. SAME—MECHANISM FOR ELECTRIC LIGHTING OF CARS.**

The Kennedy patent, No. 740,982, for mechanism for driving dynamos on railway trucks for the purpose of the electric lighting of cars, *held* void on evidence clearly showing that the invention was conceived and reduced to practice by another some months before the patentee's application was filed; there being no satisfactory proof of conception of the invention by the patentee at an earlier date.

Appeal and Cross-Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion of court below, see 153 Fed. 193.

The appellant, Consolidated Railway Electric Lighting & Equipment Company, was the complainant below in a bill filed against the Adams & Westlake Company, as defendant, for alleged infringement of three claims of patent No. 740,982. issued to the complainant, as assignee of Patrick Kennedy. The decree of the Circuit Court adjudged infringement of the claims by the defendant, in a single instance, for which injunction was granted, but that the third claim was not infringed thereby; and further adjudged that other alleged infringing devices were not infringements of either claim in suit, under the limited scope awarded, and that an accounting be denied. Assigning error for the limitations thus placed upon the several claims, and denials of relief thereupon, the complainant brings this appeal, and the defendant prosecutes its cross-appeal from the adjudication of validity or infringement of the claims in any particular.

Patent No. 740,982 (in suit) is entitled "Mechanism for Driving Dynamos on Railway Trucks," and was granted October 6, 1903, on application filed June 5, 1903, by Patrick Kennedy as inventor. It purports to be an improvement in the system of electrical lighting for railway cars, with the dynamo driven by the revolution of the car-wheels, but relates specifically "to means for mounting the dynamo upon the truck of a railway car." The description contained in the brief, submitted on behalf of the complainant appellant, is adopted, for the present statement, as follows:

"The patent recites the prior state of the art, in which dynamos had been located either inside the cross-beam of the railway truck, or, as an alternative, suspended from the car-body, and states that these expedients had faults which greatly impaired their utility. The suspension of the dynamo inside the truck brought the driving-pulley closely adjacent to the pulley on the armature of the dynamo, thus necessitating a short belt, which is liable to be

deranged, and gives an imperfect transmission of power. It is stated, also, that such arrangement of the parts rendered them difficult of access for removal or repair, and the suspension of the heavy dynamo directly from the bolts gave inadequate support under the severe usage to which railway trucks are subjected. The suspension of the dynamo from the car-body was objectionable, because, when the car is turning curves, the angle of the belt to the armature is changed, and the belt is liable to be thrown from the pulley. The object of the invention is stated as follows:

" 'The object of my invention is to obviate these practical difficulties in the transmission of power from car-axles to dynamos. To this end, I provide certain new and useful combinations of instrumentalities, hereinafter fully set forth, whereby I am enabled to place the dynamo outside of the cross-beams of the truck, and thereby secure the transmission of power thereto through a driving-belt of increased length, whereby the apparatus is made readily accessible for examination, lubrication, etc., whereby it may be readily removed from the truck when required, and whereby it is provided and held in place upon the truck with great stability and security, these advantages resulting in a much greater degree of safety, durability and economy in working than has heretofore been attained in the class of mechanisms to which my invention relates.'

"The specification then proceeds, with a description of the mechanical structure of the device, which, in substance, is as follows:

"Instead of suspending the dynamo between the axles of the wheels, the inventor suspends it outside of the end-beam of the truck, and this he accomplishes by providing a horizontal bracket frame of U-shape, the two parallel legs, a, a. being bolted to the longitudinal beams of the truck, extending outwardly beyond the cross-beam B, and connected at the ends by an integral cross-arm, b. The bracket-frame is braced by diagonal pieces H, which are bolted to it and to the end-beam, B, thus affording a strong and rigid frame within which a cradle for holding the dynamo is supported. The cradle is composed of two U-shape pieces, E, having horizontal lugs, which rest, respectively, upon the cross-beam, B, of the truck and the cross-arm, b, of the bracket, so that the cradle is suspended from the bracket, and is not dependent for its support upon the bolts by which it is secured. The cradle may be removed readily by loosening the bolts and withdrawing it from the bracket. The dynamo is pivoted to adjustable blocks, F, which are held at the base of the cradle by bolts I passing through slots, so that the blocks may be shifted endwise, and may thus provide for the alinement of the dynamo in parallelism with the car-axle. Set-screws, 1, are provided as a convenient means for effecting this adjustment. The dynamo, G, is pivoted to the blocks at n, and tension is imparted to it by an adjustable spring, P, drawing the dynamo outwardly in opposition to the tension of the driving-belt, M, which extends from a pulley, K, on the shaft of the dynamo to a pulley, L, on the car-axle, C. The spring thus keeps the driving-belt taut, and by its action in conjunction with the adjustment afforded by the pivot-blocks, F, the dynamo is maintained in an upright position, and constantly in proper relation and alinement with the axle, so that the best conditions for driving are at all times maintained.

"The specification concludes with the following statement of advantages:

" 'It will be seen that, by the novel combinations of parts herein described, the dynamo may be located at any desired distance from the driving-axle of the truck, thereby insuring the advantages of a longer driving-belt, this permitting the use of larger pulleys whether on the axle or on the armature-shaft; also that the dynamo and its adjuncts may be readily reached and inspected; also that the dynamo and its adjuncts may be easily removed and replaced as occasion demands; also that, aside from the driving-pulley on the axle, the apparatus may be readily detached from the truck by removing the bolts which attach the bracket-frame to the beams, and that when in use the tension of the driving-belt in its hold upon the armature-pulley is made constant, and held at any desired strain by adjusting the compression of the spring which actuates the dynamo.'

"The first three claims are in issue, and are as follows:

" '1. The combination with a car-truck and a bracket device, extending outside of the beams of said truck, of a removable cradle placed between said bracket and an outside cross-beam of the truck, a dynamo within the cradle and adjustably pivoted thereto, a pulley on the armature-shaft of the dynamo, a driving-pulley on an axle of the truck, a driving-belt extended from the driving-pulley to the pulley on the armature-shaft and means for elastically swinging the dynamo to maintain the tension of the belt as described.

" '2. The combination with a car-truck and a bracket extended outside of the beams of said truck, of a removable cradle placed between said bracket and an outside cross-beam of the truck, a dynamo within the cradle, adjustably pivoted at the bottom thereof, a pulley fast on the armature of the dynamo, a driving-pulley on the axle of the truck, a driving-belt extended from the driving-pulley to the pulley on the armature-shaft, and a compression-spring, provided to swing the dynamo to maintain the tension of the driving-belt as described.

" '3. The combination with a car-truck of a bracket-support outside of an outer cross-beam of the truck, a cradle having lugs at opposite sides of its top to rest upon the bracket and the adjacent cross-beam to suspend the cradle in the space between them, and a dynamo pivotally supported at its bottom within the cradle, of a pulley on the armature-shaft of the dynamo, a driving-pulley on an axle of the truck, a driving-belt extended from the driving-

pulley to the pulley on the armature-shaft, a compression-spring for swinging the dynamo against the tension of the belt to control said tension, and means for adjusting the compression of the spring as described.' "

The defendant's device, with which a single car was equipped, adjudged by the decree to be an infringement of claims 1 and 2, but not of claim 3, appears in Exhibit Figures 1 and 2, as follows:

In making subsequent devices for this so-called "cradle" the defendant changed the means for suspension and fastening, so that the trial court upheld its contention that the cradle was not made removable in the sense of the patent claims and escaped infringement. The changed form is illustrated in Exhibit Figure 1a, as follows:

THIS IS THE STYLE OF FASTENING BALE ON CAR 7599-CAFE JUST OUT OF SHOP

Other facts involved in the controversy are mentioned in the opinion.

Thomas W. Bakewell and Edward Rector, for complainant.

Louis K. Gillson and Charles C. Linthicum, for defendant.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The patent in suit, No. 740,982, involves no question of advance in method or means of lighting trains of cars by electricity, with the revolution of the car wheels utilized for generating the current, beyond improvement in the means for suspension and operation of the dynamo outside of the truck-frame of the car   Both utility and commercial value of the device are facts in this record, but the narrow scope of the claims alleged to be infringed is likewise well established, if their patentability can be upheld under the evidence.   The prior state of the art appears from uncontroverted testimony and exhibits, and no review in detail is needful for present consideration.   We deem it sufficient to mention these facts as thus established in this record: The lighting of cars by electricity was well known, and various methods were in general use on railroad trains.   An early means was storage batteries, carried on the car and charged for each trip; and later a dynamo and engine were employed for the purpose, carried on the car or train, as exemplified in Arnold's patent of 1887, No. 366,292.   Then came the system of using dynamos "driven from the car-axles," as referred to in the patent

in suit, and recognized as well known, with various locations of the dynamo and adaptations of means for its operation. Among other prior patents for improvements in the use of this system were two Moskowitz patents of 1901 (Nos. 665,539, 665,540) and two patents issued to Kennedy, the present patentee assignor (No. 685,516 of 1901 and No. 699,187 of 1902), each relating to the place and means for mounting and operating the dynamo. Moskowitz, in the one patent, shows his dynamo placed on the locomotive, belted to a pulley on an axle; and in the other the dynamo is described as "movably connected with the car-body" on a car, and shown as suspended partly from the car bed, and partly from the end of the truck. In both of the above-mentioned Kennedy patents the dynamo is carried in a cradle underneath the car; the one device with cradle irons suspended inside the truck-frame, and the other with the cradle overhanging the end of the truck-frame, referred to in the briefs as the "outside suspension," which was adopted for the improvement in suit. This location is of advantage (as disclosed by the evidence) "in the ready accessibility of the parts for removal and repairs"; and the utility of the suspension means shown in the present patent "consists in its stability and safety."

The decree upholds the validity of claims 1 and 2 of the patent, with limited scope, so that all the devices made by the defendant, except one of earlier construction, "applied by it to café car No. 7,594 of the Pennsylvania Company," for which relief was granted, were pronounced free from infringement; while claim 3 was limited thereby "to the specific form of cradle irons shown in the drawings," and the bill dismissed as to that claim for noninfringement. In the appeal by the complainant broader construction is sought of all these claims, and extension of relief thereupon against all of the defendant's structures in evidence, with the limitations placed upon the alleged invention as the sole question for review. The cross-appeal of the defendant, however, raises the questions of validity, as well as scope of these claims; and the patentability of the device is challenged, under the answer and evidence, as neither an original conception by the patentee, nor otherwise involving invention.

Careful examination of the record and briefs has confirmed the impressions we brought from the oral argument that the complainant's contentions as to the scope of invention, for more liberal interpretation of the claims, to reach other devices made by the defendant than the one originally used and adjudged to be an infringement, are untenable, that error is not well assigned, for the interpretation applied by the trial court, in so far as the relief granted by the decree, was thereby limited, and that the complainant raises no well-founded objection to the decree under its appeal. In view of our conclusions upon the defense arising under the cross-appeal, the foregoing propositions do not require specification, either of the rules of limitation thus applied to the claims, or the facts in evidence for their application.

The defendant seeks reversal of the decree, notwithstanding the seeming unsubstantial measure of relief granted in favor of the patentee, and the twofold defenses set up against the patent and claims in suit are pressed for consideration to that end on the cross-appeal. Both are issues of fact, fairly raised by the evidence, and neither is

entirely free from difficulty in the solution. The one presents conflicting testimony as to the conception of means for the patent-device, whether it originated with Kennedy, the patentee, or one Sherbondy, who reduced the conception to practice before the date of Kennedy's application; while the other involves the complicated problem of patentable invention, in the light of the prior art, with irreconcilable conflict in the expert testimony. Determination of either issue hinges, as we believe, on the prima facie force of undisputed facts, for application of the rule of law which casts the burden of proof upon one or the other party, instead of the difficult problem, urged for solution, as to the credibility of witnesses and the intrinsic weight of their testimony, respectively, and thus simplifies the issue when the rule referred to is ascertained. In this view we proceed to the consideration of the first-mentioned defense, as it is obvious that the bill must be dismissed if the evidence is sufficient to defeat the patentee's claim of originality in conception of the device for which monopoly was granted.

The patent (No. 740,982) was issued October 6, 1903, on Kennedy's application, verified April 21, 1903, and filed June 5, 1903. Thus the prima facie case is thereby established of complete conception by the patentee as of the date of his application (Robinson on Patents, §§ 132, 372, 380, 1024; Walker on Patents, §§ 69, 70, 510); and the right of the patentee is well recognized to carry the date back to the actual inventive act, as against rival claimants. (1 Robinson on Patents, § 132.) When the defense of anticipation is set up, it is unquestionable that the defendant is charged, not only with the burden of proof upon that issue, but priority of conception and reduction to practice must be clearly made out, by well-authenticated evidence, to defeat the patent. That burden, however, has been completely satisfied by the proof introduced for prima facie support of the present defense, in so far as evidence of priority in reduction to practice can meet these requirements; and the question thus arises: Is not the burden of anticipating this undisputed fact of priority in making and using the device, thereupon transferred to the claimant under the patent?

The established facts, at the stage of the case referred to, are substantially these: The patentee, Kennedy, and the witness Sherbondy (introduced for the defense) are rival claimants for priority in conception of the substantial features of the patent device. Both are engineers of recognized skill in electric equipment—Kennedy, as chief engineer of the complainant company, and Sherbondy, as chief electrician of the Pennsylvania Railroad—and each was engaged, in the course of duties, in devising improvements for the system of lighting cars by electricity. They were acquaintances, and in business relation for equipments in such line. Prior to 1903 Kennedy had obtained patents for several suspension devices—including one for so-called "outside suspension," in No. 699,187, issued May 6, 1902, on application filed August 17, 1901—and was soliciting, for his company, equipment of various railroads, including the Pennsylvania, with the outside suspension, which he hoped to improve, as none of his earlier devices were entirely satisfactory. Sherbondy (as we assume) was acquainted with these various patents, and with Kennedy's quest, both

for opportunity to equip with his means and to improve upon it. In 1901, however, Sherbondy undertook and carried out an equipment of cars for the Pennsylvania Company with the dynamo suspended outside the truck-frame, instead of inside, as theretofore practiced; and as completed in dining car No. 7,580 in December, 1901, it is unmistakable that the suspension means of this equipment responds in every substantial element to the means of the patent in suit. Moreover, it is conceded that Sherbondy, on the arrival of the car at Chicago, about January 3, 1902, exhibited and explained the structure to Kennedy, without comment by either as to the source of conception. Another car, then in the shops, was equipped with like device, and completed February 8, 1902; and drawings then made of the device are in evidence and clearly established.

With the above-mentioned facts of complete anticipation in construction and use—known to the patentee several months prior to his application for a patent—settled by the evidence, we are of opinion that the presumption of invention by the patentee, which arises from the patent, application, and grant, is overcome, prima facie, by such anticipation in Sherbondy's prima facie conception reduced to practice, so that the burden of proof is transferred to the patentee to establish priority in fact. Westinghouse Electric & Mfg. Co. v. Catskill Illuminating & Power Co., 121 Fed. 831, 834, 58 C. C. A. 167. This view of shifting the burden of proof in such event is upheld in well-considered opinions at the circuit (Webster Loom Co. v. Higgins, 15 Blatchf. 446, Fed. Cas. No. 17,342; Thayer v. Hart, Jr. [C. C.] 20 Fed. 693; Westinghouse Elec. & Mfg. Co. v. Saranac Lake Elec. L. Co. [C. C.] 108 Fed. 221, 222; Westinghouse, etc., v. Mutual Life Ins. Co. [C. C.] 129 Fed. 213, 216), and stated in Walker on Patents, § 510. In Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 492, 11 Sup. Ct. 846, 851, 35 L. Ed. 521, however, the opinion by Mr. Justice Bradley states the rule in like case, in qualified form, as requiring "the plaintiffs, in rebuttal, to show, if not with equal certainty, yet to the satisfaction of the court, that the invention" claimed in the patent preceded the date thus shown with certainty, in respect of a device which anticipated the patent dates. For the purposes of the present case we deem it immaterial which of the rules thus stated is applied to the evidence for determination of the issue, as neither side furnishes satisfactory and convincing proof, consistent with other testimony, of a well-defined perfection of the alleged invention at any period prior to December, 1901, within the rule as stated in the last-mentioned opinion—bearing in mind, as there remarked (page 489), that "a conception of the mind is not an invention until represented in some physical form."

While it is true that drawings are introduced on behalf of the patentee, exhibiting the suspension means, with testimony which tends to fix their date, as stated in complainant's brief, "somewhere between July and the last of October, 1901," each exhibit rests on the recollection and credibility of witnesses for the alleged date, at best stated indefinitely; and the drawing, which is relied upon for complete representation of the device, shows erasures and changes, which are not

satisfactorily explained, as made before 1902. An exhibit "rough sketch," in a memorandum book of a witness (Sexton), is introduced, as tending to show disclosure of the patent-device to this witness, by Kennedy, about November 17, 1901. Expression of the means of an alleged invention, in a drawing or sketch, is frequently the best attainable evidence of the needful "representation in physical form," and may rightly be accepted as satisfactory proof of such fact, when fairly authenticated, definite, and reasonable under all the circumstances. The exhibits referred to, however, are not so authenticated in date, consistently with other facts, that they can be accepted, in our view of the circumstances, as satisfactory confirmation of the testimony of the patentee that he had perfected and communicated the device of his patent, prior to the alleged conception by Sherbondy, which was reduced to practice so long in advance of Kennedy's application.

Without attempting to detail the extended testimony in reference to the various efforts to provide for locating the dynamo outside the truck of the car, the following circumstances are pointed out as uncontroverted and anterior to the Kennedy application, filed June 5, 1903, namely: (a) When Sherbondy completed his equipment of cars, in December, 1901, the only device for like location of the dynamo, which had been made or applied by Kennedy, was that described in his patent of 1902 (No. 699,187) which was applied to Grand Trunk cars about June, 1901, and later was placed on a Santa Fé car, and reported satisfactory. (b) Assuming that he was then contemplating and working out an improved device, Kennedy had neither applied nor made one which embodied the simple adaptation of the present patent, before his attention was called to the device operating on Pennsylvania car No. 7,580. (c) Nor does it satisfactorily appear from the testimony that any portions of equipment, specially adapted for the device of this patent, were actually made by Kennedy or his company prior to 1902—as the shop orders in evidence are equally referable to the earlier devices—while it does appear that Kennedy's directions (January 4, 1902), for Santa Fé cars to be "equipped with the outside suspension" (theretofore ordered by that company), were written after his examination of the Pennsylvania car. (d) Kennedy's application for the patent (No. 699,187) of 1902 was filed August 17, 1901, and he was absent in Europe after that date until about October 8th. He testifies that upon his return he "took up the question of improving the outside suspension generally, and working out the details particularly." (e) While Kennedy testifies that Sherbondy's device was made under Kennedy's conception, as communicated when they met at Ft. Wayne, November 28 or 29, 1901, his statement of what was said is insufficient for such communication, namely: "I told him what I was doing, in a general way, in the design of a new outside suspension, which would overcome" objections to the earlier device. This is expressly denied by Sherbondy; but, aside from the dispute of fact, no clear communication appears of the single feature on which patentability must rest, simple as that element is when disclosed. (f) In Kennedy's version of the conversation with Sherbondy, November 28th or 29th, in which it was understood that each was working out a method of outside suspension for practical use, no claim or suggestion

appears on the part of either that patentable invention or application for a patent was in contemplation; nor was interference claimed or suggested by either when Sherbondy exhibited his device as completed on car No. 7,580.

Under the state of facts thus appearing, we are of opinion that the patentee fails to establish such priority in conception over the Sherbondy device as must be required to uphold patentability, within either of the above-mentioned definitions of the rule to be applied. No circumstance in the case authorizes acceptance of the patentee's testimony as outweighing that of Sherbondy upon such issue, while the witness Sherbondy appears to be disinterested in so far as concerns the present controversy, and his testimony is consistent with the undisputed facts. In no view of the record are we impressed with the sufficiency of the evidence to carry Kennedy's alleged invention back of 1902, so that the undeniable anticipation of that date by Sherbondy leaves the decree without support.

The decree of the Circuit Court is reversed accordingly, with direction to dismiss the bill for want of equity.