WESTINGHOUSE ELECTRIC & MFG. CO. v. CATSKILL ILLUMINATING & POWER CO.

(Circuit Court of Appeals, Second Circuit. February 25, 1903.)

No. 8.

1. PATENTS—ANTICIPATION—ELECTRICAL MOTORS.

The Tesla patents, Nos. 511,559 and 511,560, the former covering a certain method, and the latter certain means, of operating electrical motors by means of alternating currents from a single original source, known as the "split phase" system, *held* void for anticipation by the printed publication at Milan in an Italian journal on April 22, 1888, of a report of a lecture by Prof. Galileo Ferraris, fully describing such system; complainant's evidence being insufficient to sustain the burden of proof resting upon it to show that Tesla's invention was prior to such date.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 110 Fed. 377.

Chas. A. Brown and Wm. K. Kenyon, for appellant.
Thos. B. Kerr and Parker W. Page, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Appeal by defendant in the court below from its decree on bill alleging infringement of complainant's patents Nos. 511,559 and 511,560, granted to Nikola Tesla on December 26, 1893. The court below sustained both patents, and found infringement of both claims of patent No. 511,559 and of the first claim of patent No. 511,560. Inasmuch as we have reached a conclusion adverse to the complainant upon the question of priority of invention, the other issues will not be discussed.

The claims of patent No. 511,559 are as follows:

"(1) The method of operating motors having independent energizing circuits, as herein set forth, which consists in passing alternating currents through both of the said circuits, and retarding the phases of the current in one circuit to a greater or less extent than in the other.

"(2) The method of operating motors having independent energizing circuits, as herein set forth, which consists in directing an alternating current from a single source through both circuits of the motor, and varying or modifying the relative resistance or self-induction of the motor circuits, and thereby producing in the currents differences of phase, as set forth."

The first claim of No. 511,560 is as follows:

"(1) The combination with a source of alternating currents and a circuit from the same of a motor having independent energizing circuits connected with the said circuit, and means for rendering the magnetic effects due to said energizing circuits of different phase, and an armature within the influence of said energizing circuits."

The claims of the former patent cover a certain method and of the latter certain means of operating electrical motors by means of alternating currents from a single original source. This system is known as the "split phase" system. Nikola Tesla, the patentee herein, was the inventor of what is known as the "polyphase system" of transmission of power, and had covered by his earlier patents, Nos. 381,-968, 382,279, and 382,280, said system when operated by means of currents of varying phase from independent lines or circuits. The applications for these earlier patents were filed during the fall and winter of 1887 and the winter and spring of 1888, the final fees were mailed on April 8, 1888, and said patents issued May 1, 1888. Up to April 8th, Tesla had not intimated to his solicitor that his broad invention of the rotary field motor could be practiced by any means which did not involve the use of two independent circuits from the generator to the motor. The applications for the patents in suit were filed December 8, 1888. By the method and means therein described Tesla dispensed with one of the line circuits, and was able to run the motor by means of alternating currents from a single original source. This was accomplished, as appears from the foregoing claims, by means which so retarded the phases of the current in all circuits, or so varied the relative resistance of the motor circuits, as to maintain the necessary difference of phase in the currents. Such utilization of a single original source by thus splitting a single current into two currents was an improvement of great practical value. But on April 22, 1888, there had been published at Milan, in an Italian journal, a report of a lecture by Prof. Galileo Ferraris, in which the system covered by the patents in suit was fully described. This printed publication is such a disclosure of the subject-matter of the patents in suit that, if prior thereto, it would constitute an anticipation.

To support the burden thus cast upon it of proving to the satisfaction of the court that the supposed inventions in suit were made prior to April 22, 1888, complainant has introduced a photograph and the evidence of two witnesses, Messrs. Brown and Page. One of said witnesses has testified that said photograph represented a motor which was in Tesla's shop in the fall of 1887, and in which the difference in phase was secured by the introduction in one of the circuits of a coil having self-induction. There is nothing in the photograph, however, to indicate the means by which said motor was operated, nor whether it was adapted to receive a single or double current from the generator. Its construction is at least as suggestive of use in connection with the earlier polyphase as with the later split phase patents. We are therefore confined to a consideration of the testimony of said two witnesses.

Mr. Brown furnished capital to Tesla to make his experiments at the date here in question, and afterwards sold his interest in the Tesla inventions to this complainant. On May 25, 1900, he testified that in

1887 Tesla disclosed to him certain inventions made by him relating to split phase alternating current motors, and showed him such motors in operation in his shop in Liberty street (in 1887), and that the shop was afterwards moved and destroyed by fire, and he thought all the motors were destroyed in said fire. He further stated that he had had no experience with alternating currents beyond that which he had had through his connection with Tesla. He failed to identify the date of the disclosure, or to account for the loss of said motors, further than as hereinbefore shown, and complicated his vague general description of said apparatus by contradictory statements as to the specific means used in their operation. But apart from all this, he failed to so describe the said apparatus that this court can determine whether they did in fact embody in structure and practical operation the specific form of apparatus used by the defendant. Such evidence, under the familiar rule, called either for corroboration or for some explanation why corroboration was impossible. The complainant failed to comply with said rule. It failed to show that Tesla alone constructed said motors, or to produce any one employed in said shop in 1887 who might have seen said motors, or taken part in their construction, or to account for their absence. It failed to put Tesla himself, a resident of New York, on the stand, to show to the court the precise nature of the inventions disclosed and practiced by him in 1887. Farther than this, other uncontradicted testimony strongly tends to show that the witness must have been mistaken as to the date of this disclosure and of the operation of said motors. It appears that in 1888 Tesla spent nearly two weeks at the factory of the Mather Electric Company, explaining his new alternating current motor inventions, with a view to interesting said company in their development and manufacture; that one of the objections made to their operation was the fact that they required a special generator and extra wires, but that Tesla did not then claim that he had made any invention whereby two currents of different phase could be derived from a single source. Again, complainant's other witness to the date of invention, Page, who was Tesla's attorney, and who, during 1887 and 1888, prepared the Tesla applications for the polyphase and other patents, including those here in suit, testified that up to a few days after April 8, 1888, "Mr. Tesla had never intimated in any way to me that his invention of the rotary field motor could be practiced by any means which did not involve the use of two independent circuits from the generator to the motor." We are forced to the conclusion that Brown, testifying at this distance of 13 years, must have had in mind the year 1888, during which year also, as he testifies, he saw said motors in said shop.

We are brought, then, to a consideration of the testimony of said Page, the witness chiefly relied on to carry the date of invention back of April 22, 1888. The material parts of his testimony are as follows, namely, that, having been employed as aforesaid, Tesla "explained that he had other ideas about the operation of these motors, and thereupon disclosed to me his scheme for operating the motors by connecting them with single circuits"; that "when he first described the scheme of patent 555,190 (application filed May 15, 1888), Mr. Tesla

also described to me the plan of operating these motors which involves the splitting of a circuit, * * * upon which patent 511,560, which is one of the patents in suit, is based"; and "that I understood fully from his description, not only the principal and essential features of the inventions involved in the patents in suit, but also another plan which he had at that time developed for effecting the same result by making the poles of a motor of different magnetic susceptibility * * * the subject of an application filed October 20, 1888, and which became patent No. 524,426." It further appeared on the hearing in this court that Mr. Page filed three other Tesla applications on April 23, 24, and 28, 1888, respectively, and which issued in October, 1888, as patents Nos. 390,414, 390,820, and 390,721, respectively. Neither these patents nor Nos. 555,190 and 524,426 are in suit herein. Some of the patents cover modifications of the polyphase system, others of the split phase invention. The applications which resulted in the patents in suit were not filed until December 8, 1888. As to the character and date of said disclosures, the witness further testified as follows: "I cannot say, from present recollection, how many of the specific arrangements for producing artificially the necessary differences of phase which are described in the two patents in suit Mr. Tesla described to me in the early part of April, 1888, but my recollection is clear to the fact that between April 8 and April 18, 1888, on which latter date I entered a charge in my diary for services in this particular matter." The diary was not produced. The witness stated: "I had occasion several years ago to look up the facts in connection with the matter about which I have just testified, and at that time I had this book in my possession;" that he then used it in giving certain testimony; that he had since searched for it, but had been unable to find it; and that his present testimony was based upon his recollection of the matter, and upon the records of previous testimony given on this point.

This evidence is clear, direct and persuasive as to a disclosure by Tesla of various schemes for operating motors on the split phase principle. But it falls far short of the requirement in such a case. "The burden which rested upon the defendant in the first instance has been transferred to the complainant, and it must furnish the court with convincing proof that the anticipation has been anticipated." Westinghouse Electric & Manufacturing Company v. Saranac Lake Electric Light Company (C. C.) 108 Fed. 221, 222. Clark Thread Company v. Willimantic Linen Company, 140 U. S. 481, 11 Sup. Ct. 846, 35 L. Ed. 521. It is to be noted that this testimony relates to events which occurred 12 years before; that the only means which the witness had for refreshing his recollection is the lost diary. The witness could not be expected to have any independent recollection as to what was covered by the charge, entered four days before the date of the anticipating publication, for "services in this particular matter," nor whether the date and character of said charge was correctly entered. The evidence fails to show the specific character of said disclosure, whether it covered the constructions herein held to be infringed, or some of the other constructions embraced in the patents in suit, or in said other patents not in suit on which the witness was then en-

gaged. Nor does it appear with satisfactory definiteness that the disclosure was a sufficiently full and complete disclosure of the particular claims involved herein, or, if so, which were thus disclosed. The witness does not state what Tesla said to him. Apparently, all that he learned from Tesla was the "principal and essential features of the inventions involved in the patents in suit." The fact that the applications for the patents in suit were not filed until December 8, 1888, while said applications for other specific phases of said invention were filed on May 15th and October 20th, tends to support the claim that the "particular services" were rendered in regard to said earlier specific inventions, and that Tesla did not perfect and complete the inventions in suit until a later date. In these circumstances it was incumbent upon complainant to furnish additional evidence in order to remove these uncertainties, or to account for its failure so to do. No attempt was made, however, to further fix the date or character of Page's services, either by the books of his firm, the bills rendered, the testimony of his partners or of his Washington associates, with both of whom he consulted, or by the date of the trip taken to Washington in regard to the matter, or by the testimony of Tesla himself. Complainant has failed to comply with the fundamental rule that the best evidence of which the case is in itself susceptible must be produced. In these circumstances we are constrained to hold that invention by Tesla prior to April 22, 1888, has not been proved.

The decree is reversed, with costs, and with instructions to the court below to dismiss the bill, with costs.