WESTINGHOUSE ELECTRIC & MFG. CO. v. STANLEY INSTRUMENT CO.

(Circuit Court of Appeals, First Circuit.   September 9, 1904.)

No. 504.

1. PATENTS—INFRINGEMENT.
　　The Tesla patents, Nos. 511,559 and 511,560, for an improved method and means of operating electric motors, *held* valid and infringed.

2. SAME—PATENTABLE INVENTION.
　　Watson v. Stevens, 51 Fed. 717, 2 C. C. A. 500, and DuBois v. Kirk, 15 Sup. Ct. 729, 158 U. S. 58, 39 L. Ed. 895, applied to sustain as patentable a particular practical application of a known principle, which proved to be of advantage in the arts.

3. SAME—DECISIONS OF OTHER COURTS.
　　The history of the litigation in reference to the patents involved stated, and also the practice in this circuit with regard to following decisions of the courts of appeals in other circuits in regard to letters patent for inventions reviewed, and the method of practically applying the same restated.

4. SAME—ANTICIPATION.
　　On this appeal the defense alleged anticipation by prior publication. *Held*, that it was sufficient that the proof furnished by the complainant as to such alleged prior publication was "full, unequivocal and convincing," and that the case does not require that it should be "beyond reasonable doubt."

5. TRIAL—OBJECTIONS TO EVIDENCE.
　　When a portion of complainant's testimony in this case was taken before the examiner, the respondent noted the following: "Testimony objected to, in whole or in part, as incompetent and insufficient on the issue of priority of invention."   No specific objection was taken as to the mere form in which the interrogatories were put and the evidence given.   The rule is therefore applied that the substance of the testimony could not be

rejected on the ground that, if the respondent had desired to control the method of testifying according to the proper rules applicable thereto, he should have interposed specific objections at the proper time.

6. PATENT—ACQUIESCENCE.

Where a patent for an invention which promised and proved to be of great pecuniary value was granted after interference proceedings in the Patent Office, and was for years acquiesced in, or sustained when later brought into litigation, largely on the defense of anticipation, such facts have weight in favor of the patent, when the same issue is again raised on a bill in equity alleging infringement, although against new parties.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 129 Fed. 140.

William K. Richardson and Thomas B. Kerr (Kerr, Page & Cooper, on the brief), for appellant.

Charles E. Mitchell and William Houston Kenyon (Mitchell, Bartlett & Brownell, on the brief), for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge. There is so much judicial literature bearing on this case that only a brief preliminary statement is required. The bill alleges an infringement of the two claims of letters patent for an invention, No. 511,559, issued to Nikola Tesla, on December 26, 1893, on an application filed on December 8, 1888, and of the first claim of No. 511,560, issued to Tesla on the same December 26, on an application filed on the same December 8. No. 511,559 is captioned "Electrical Transmission of Power," and opens with the statement that Tesla had invented "certain new and useful improvements in electrical transmission of power." No. 511,560 is captioned "Systems of Electrical Power Transmission," and opens with the claim that Tesla had invented "certain new and useful improvements in systems of electrical power transmission." The claims of No. 511,559 are as follows:

"(1) The method of operating motors having independent energizing circuits, as herein set forth, which consists in passing alternating currents through both of·the said circuits and retarding the phases of the current in one circuit to a greater or less extent than in the other.

"(2) The method of operating motors having independent energizing circuits, as herein set forth, which consists in directing an alternating current from a single source through both circuits of the motor and varying or modifying the relative resistance or self-induction of the motor circuits and thereby producing in the currents differences of phase, as set forth."

The claim of No. 511,560 in issue is as follows:

"(1) The combination with a source of alternating currents, and a circuit from the same, of a motor having independent energizing circuits connected with the said circuit, and means for rendering the magnetic effects due to said energizing circuits of different phase and an armature within the influence of said energizing circuits."

The bill was dismissed by the Circuit Court by an opinion passed down on March 11, 1903, 129 Fed. 140. The only reason for dismissal given was that the complainant had failed to establish by

sufficient proofs a conception of the invention by Tesla prior to April 22, 1888, the date of a certain publication in Italy known as the Ferraris publication. The opinion refers to one of the Circuit Court of Appeals for the Second Circuit (Westinghouse Co. v. Catskill Co., 121 Fed. 831, 58 C. C. A. 167), passed down on February 25, 1903, wherein it was held that the proofs were insufficient to establish invention by Tesla prior to April 22, as rendering unnecessary an extended statement by himself. Thereupon the complainant appealed to us.

The patents in suit relate to the conversion of alternating currents of electricity into a continuous current. The latest condition of the prior art is shown by patents issued to Tesla under date of May 1, 1888, referred to over and over again in the judicial literature on this topic. These describe a system "of electrical power transmission in which the motor contains two or more independent energizing circuits through which were caused to pass alternating currents," "conveyed directly from the generator to the corresponding motor coils by independent lines or circuits." The improvement of the patents in suit dispenses with one of the lines, or circuits.

The fundamental nature of Tesla's invention in issue we think was clearly and correctly put by Prof. Main, an expert called by the complainant. He testified that in the patents in suit it was pointed out that, without the use of a commutator, an alternating current could be received from a single circuit, be subdivided, and then caused to react in such manner as to produce continuous and sufficient energy for practical power purposes. But he also testifies, and we accept this testimony as correct, as follows:

"I do not understand that in the patents in suit Tesla claims to be the first to discover that the phase could be split, either by induction or by the use of electrically dissymmetrical circuits. It is my understanding that Mr. Tesla, in his search for a method of driving a polyphase motor from a single circuit, availed himself of an item of merely philosophical knowledge, never before applied in driving motors, and that, for reasons explained, this application was not obvious, even in the light of his own prior patents."

We find nothing in the complainant's case, or in the patents themselves, which indicates that Tesla's application of principles scientifically known, as explained by Prof. Main, was found to involve any special difficulties requiring the exercise of the inventive faculty. Therefore the invention consisted in merely applying to practical uses facts that were known scientifically, but never before thus applied. Indeed, both parties have taken this view of Tesla's invention in issue here. The complainant says that the invention, "stated in its simplest form, was based upon the conception that, instead of employing two independent sources of current and two transmission circuits between the source and the motor, he"—that is, Tesla—"might employ but a single source, and a single circuit leading to the motor; at the latter, divide the circuit into two paths, and by artificial means retard the current in one of these paths to a greater extent than in the other." Also, at another place, it says that the invention did not in the slightest reside in any of the mech-

anism employed, and that, therefore, it might be described in a few words. The respondent took the same view until a different one seemed necessary in order to cover the issue of anticipating the Ferraris publication. In opening the case the respondent maintained as follows: The alleged invention of the patents in suit is not addressed to the utilization of two-phased currents in a motor, but to an alleged new way of producing the necessary two out-of-phase currents; this specific way of producing two out-of-phase currents was old and well known in the art, and was old and well known as an equivalent of the method set out in the May 1, 1888, patents; all the methods of producing two or more out-of-phase alternating currents set out in the Tesla patents were, in and of themselves, old and well known in the art as means and methods of producing such out-of-phase currents; and their laws and limitations had been known and set out in a way not even approximated in accuracy or fulness in any of the Tesla patents. The respondent then further maintained that Dr. Kennelly, on pages 207 and 209 of this record, explained the fact that the alleged invention in the patents in suit involved merely the substitution of one means of obtaining two-phase currents for another means, and that on pages 234 to 249, inclusive, he shows that these two means were old and well-known equivalents. Of course, all this was with the purpose of maintaining that there was no invention in any view of the patents now in issue. It unavoidably concedes, however, that, if there were invention, it was of the fundamental and simple nature which we have described. It is true, as already said, that subsequently the respondent took a different position; but, as the one we have just explained was the one into which it naturally fell, we are safe in affirming, as we do, that the experts on each side, and the parties themselves, have accepted the invention in issue as we have stated it.

When, under special circumstances like those referred to by Prof. Main, a particular practical application of a known principle proves to be of advantage in the arts, and yet the thought of making it had not occurred to those expert therein, such application, at times, involves invention. This, within a somewhat narrow range, was shown by us in Watson v. Stevens, 51 Fed. 757, 2 C. C. A. 500, in Heap v. Tremont & Suffolk Mills, 82 Fed. 449, 27 C. C. A. 316, and in some other cases. More striking illustrations are found in Western Electric Company v. Larue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294; National Cash-Register Company v. Boston Company, 156 U. S. 502, 15 Sup. Ct. 434, 39 L. Ed. 511; DuBois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729, 39 L. Ed. 895; and many other decisions of the Supreme Court. Neither of these strikes the imagination, or demands a verdict in favor of inventive genius, to such an extent as does the application in the case at bar of electrical principles already philosophically known.

The corollary of this proposition, which we will apply later, is that in cases of this character, where the originator has boldly struck out into a practical application, and stated it, though only in general terms, he has, for the most part, made his conception

clear, even though the mechanical details have not been expressed or thought out. The Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863. Therefore, Prof. Main was right in testifying to the effect that, if Tesla made clear his conception in a general way, he made clear his invention, leaving the artisan skilled in electrical science to work out the practical details required in applying what was previously within the bounds of philosophical knowledge. The importance of this last proposition will become more clear when we take up the testimony offered by the complainant to show that Tesla anticipated Ferraris.

It must be admitted that Ferraris, in the publication of April 22, 1888, disclosed alternating currents transformed by derivation, so called, and also by induction. Tesla's conception was in this respect at least as broad as Ferraris's. Nevertheless, he proceeded in a singularly fragmentary way. As the result of an application filed on May 15, 1888, which was subsequently divided, he secured two patents—one No. 511,915, issued on January 2, 1894, and one No. 555,190, issued on February 25, 1896. No. 511,915 we need not further trouble ourselves about. No. 555,190 claims the combination which represents the alleged invention of Tesla as practiced by the method of induction. We may observe that, although both of these patents were applied for before the patents in suit, yet they issued after them, and it is not claimed that those in suit are invalidated by them. We have no occasion to enlarge on this proposition. There is no claim that the respondent uses the method by induction. On the other hand, it is conceded that, if it infringes, it is by the derivative method. Therefore, patent No. 555,190 comes in here on the part of the complainant solely for establishing certain dates to which we will hereafter refer, and on the part of the respondent as leading up to the proposition to which we will again refer, that Tesla's original conception was limited to the inductive method, and that his broadening out so as to cover the derivative method did not precede the filing of the application of May 15, 1888.

It may be plausibly maintained that the first claim of No. 511,-559 should be construed to cover Tesla's broad invention. The second claim covers only the method by derivation. The self-induction spoken of in it means, of course, the peculiar results which come from inserting a coil in an electric conductor, in consequence of the various portions of the coil reacting on each other, and thus delaying the current without necessarily diminishing its ultimate force. No. 511,560 must be construed broadly to cover Tesla's entire conception, except that it is limited by the word "connected" to the method by derivation, or self-induction. We must refer to this topic again.

The patents now in issue were sustained by Judge Thompson in the Circuit Court for the Southern District of Ohio in Westinghouse Company v. Dayton Company, in an opinion passed down on February 6, 1901, reported in 106 Fed. 724. Judge Thompson was affirmed on appeal by the Circuit Court of Appeals for the Sixth Circuit, in an opinion passed down on November 15, 1902, and

reported in 118 Fed. 562, 55 C. C. A. 390. This opinion was rendered by Judges Lurton, Day, and Severens, all judges of high repute. The relations of the Ferraris anticipation to this decision we will explain further on. The patents were also sustained by Judge Lacombe in Westinghouse Company v. Catskill Company (C. C.) in an opinion passed down on August 22, 1901, and reported in 110 Fed. 377. This was reversed on appeal by the Circuit Court of Appeals by an opinion passed down on February 25, 1903, reported in 121 Fed. 831, 58 C. C. A. 167. This opinion was unanimously concurred in by three judges, also of high reputation, Wallace, Townsend, and Coxe. It rested wholly on the Ferraris anticipation. The proofs are claimed to have been substantially the same as in the case at bar, but we will show hereafter that at least one very important fact was not formally in the case, and therefore was not thoroughly considered. Afterwards, in the same circuit in the Western District of New York, in Westinghouse Company v. Mutual Life Insurance Company, by an opinion of February 9, 1904, reported in 129 Fed. 213, Judge Hazel reviewed the proofs which were before the Circuit Court of Appeals for the Second Circuit, in connection with the testimony of Tesla himself, reached a conclusion overruling the Ferraris defense, and sustained the patents. In the Eastern District of Pennsylvania, in Westinghouse Company v. Roberts, in an opinion passed down on September 10, 1903, reported in 125 Fed. 6, Judge Archbald reached the same conclusion as reached by Judge Hazel. The proofs in behalf of the complainant had been strengthened by a reference to the interference proceedings between Tesla and Ferraris, and, also, apparently, by the testimony of Tesla. In the Northern District of Illinois, in Westinghouse Company v. The Electrical Appliance Company, by an opinion passed down on March 26, 1904, reported in 133 Fed. 396, Judge Kohlsaat sustained the patents, following Judge Archbald and Judge Hazel. Judge Kohlsaat did not make clear what evidence he considered, and he merely said that the difficulty which the Circuit Court of Appeals for the Second Circuit found had been overcome. Also, in the Western District of Pennsylvania, in Westinghouse Company v. Jefferson Company, by an opinion passed down on March 28, 1904, 128 Fed. 751, Judge Buffington stated that infringement was conceded, and that the difficulties which the Circuit Court of Appeals for the Second Circuit found had been successfully met. He granted an ad interim injunction.

The result is that, as the decisions now stand, a Circuit Court to which an application might be made for an ad interim injunction against an alleged infringer of the patents now in issue would perhaps refuse it in all the districts in the Second Circuit except the Western District of New York, but would grant it in the last-named district, and also in the Third, Sixth, and Seventh Circuits, while elsewhere the question would probably need to be litigated as litigated before us. On several occasions we have explained our disposition to follow the decisions of the Circuit Courts of Appeals in other circuits, recognizing them as carrying practically the same weight as our own. We have especially shown the propriety of this

with regard to decisions touching letters patent for inventions, in Beach v. Hobbs, 92 Fed. 146, 147, 34 C. C. A. 248, and Hatch Storage Battery Company v. Electric Company, 100 Fed. 975, 976, 41 C. C. A. 133. The Supreme Court laid down a like practical rule in Hobbs v. Beach, 180 U. S. 383, 388, 389, 21 Sup. Ct. 409, 45 L. Ed. 586. In the present case, however, while the Circuit Court might well have felt constrained to follow the result in the Circuit Court of Appeals for the Second Circuit, the body of prior judicial decisions is of such an inharmonious character that we may well make an independent investigation, based on the evidence before us. Yet, of course, our judicial foresight will not enable us to determine whether by so doing we will clarify the condition or increase the confusion.

Inasmuch, however, as we must examine the prior decisions to a certain extent in reaching whatever conclusions we may reach, it is necessary that we should point out the principles which should guide us in doing so. How are the cases to be brought together for this purpose? An answer based on necessary rules of procedure seems clear. It is essential that the facts brought out in the earlier litigation should be proved in the pending cause independently and according to the ordinary rules of evidence, and that thereupon the court in the pending cause should advise itself as best it may of what appeared to the courts making the prior decisions from the opinions rendered by them, or from an informal ascertainment otherwise of what was laid before them. As this ascertainment is merely to inform the conscience of the court in the pending cause, and to enable it to follow the lines of reasoning and the conclusions of the tribunals rendering the earlier decisions, it involves only a gathering of the history thereof from any reliable source. This may be done by the informal production of the records in the earlier cases, as well as by a perusal of the opinions of the courts. The court in the pending suit may accept the statements of counsel so far as they are not controverted, or, if controverted, so far as the court can, by informal methods, satisfy itself in regard thereto. In these ways we have discovered that the proofs on which the Circuit Court of Appeals for the Second Circuit proceeded were substantially the same as those in the record before us, with the exceptions we will discuss, including the fact that the only reference by that court to the application of May 15, 1888, was incidental. It is true that it twice referred to this application and Mr. Page's testimony concerning it; but we use the word "incidental" because neither the application nor the patent on which it issued was formally put in evidence, and apparently they were not pressed on the court so carefully as they have been on us. In one other respect the proofs essentially differ, and that is in the omission here of the facts in regard to the relations of Tesla to the Mather Electrical Company, proved, as we understand by the testimony of a witness by the name of Anthony. The Circuit Court of Appeals for the Second Circuit evidently gave great weight to this testimony. It is not before us, and how it would have appeared after being tested a second time it is impossible to

estimate. Especially in view of the decisions of other courts to which we have referred, there is enough in the two facts: First, that the application of May 15 was not under close consideration by the Circuit Court of Appeals in the Second Circuit as we have been compelled to consider it; and, second, that we have not the proofs in regard to the Mather Electrical Company to compel us to give this case an independent investigation.

We must next consider the nature and amount of the proofs which the complainant was required to give to meet the alleged Ferraris anticipation. Smith & Griggs v. Sprague, 123 U. S. 249, 264, 8 Sup. Ct. 122, 31 L. Ed. 141, laid down the rule that where a prior use for more than two years is set up in defense, and where this defense is met only by an allegation that the prior use was not a public use in the sense of the statute, proof on the part of the patentee in reference thereto "should be full, unequivocal and convincing." Sometimes the Supreme Court has used the expression "beyond reasonable doubt." In Clark Thread Company v. Willimantic Linen Company, 140 U. S. 481, 492, 11 Sup. Ct. 846, 35 L. Ed. 521, where the question was exactly that which we have before us, namely, dating back the invention prior to a publication anterior to the application for the patent in suit, it was ruled that it was incumbent on the patentee to show to the satisfaction of the court that the invention had priority. The more forceful language has been uniformly applied by the Supreme Court wherever an alleged infringer undertook to prove by oral proofs prior public use or prior invention. Thus that court to that extent gives to a patentee the practical benefit of the presumption arising from the grant of his patent.

The more stringent expression is exceptional in civil cases, and, if applied to a patentee who must meet an alleged anticipation by publication, it would be a very hard one when many years have elapsed. Publication stands always, and proves itself. "Litera scripta manet." In case of a judicial issue made early after the granting of a patent, the patentee might have abundant oral proofs, or proofs partly oral and partly by drawings and models, which would easily meet the alleged anticipation, but which would ordinarily become clouded, or to a large extent lost, when the issue is made after many years. Therefore, when we touched on this topic in Brooks v. Sacks, 81 Fed. 403, 405, 26 C. C. A. 456, where there was a question, nevertheless, between two patentees, each of them having the favorable presumption which arose from the grant of his patent, we said, at page 407, 81 Fed., page 460, 26 C. C. A., that the complainant had come far short of proving his prior right "as satisfactorily as required by the authorities." Even there we did not go any further than to use that milder form of expression, and we do not think that we are now required to go beyond the expression in Clark Thread Company v. Willimantic Linen Company, to the effect that the alleged anticipation must be met by proofs which satisfy the court.

In Brooks v. Sacks we made it evident that unsupported recollection with reference to events occurring many years prior would

ordinarily be regarded as insufficient for the purposes we are now considering. In the present record, however, we have one fact of an indubitable character to which the testimony of one witness, Mr. Page, can be anchored beyond doubt so far as concerns one crucial date. We mean the patent issued on the application of May 15, 1888, to which we have already referred.

The claim is made that we should reject the testimony offered by the complainant on the issue of anticipation, on the ground that it was within its power to have strengthened it. Among other things in this direction, the omission to call Tesla is relied on; also the omission by Mr. Page to investigate and produce the account books of the legal partnership in which he was a member, bearing out certain entries on his diary to which we will refer; also the omission to prove by independent witnesses certain journeys and conferences testified to by Mr. Page as having occurred during the summer and early autumn of 1888, which journeys and conferences he said had relation to the preparation of the applications on which the patents in suit issued. The facts about these journeys and consultations, even if supported by definite independent proofs to a demonstration, would not affect the substance of Mr. Page's testimony, because they were brought out with reference to the delay which ensued between the alleged time when Tesla first explained his invention to Mr. Page, in April, 1888, and the date of the filing of the applications for the patents in suit, December 8, 1888. It is true that, if definitely proven in a hostile direction, they might impugn Mr. Page's veracity or general accuracy of memory; but no real attempt of this nature has been made. It is not claimed anywhere that Mr. Page does not stand at least as an honest witness, or that his memory is peculiar or exceptional one way or the other. The attack on the complainant's case in reference to the Ferraris publication does not truly rest on any peculiarity of this kind, but on the general rules stated by us in Brooks v. Sacks. Therefore the only weight which the delay in filing the applications for the patents in issue could carry in favor of the respondent, if any, would come from the mere fact of delay. The experimental state of the art at the time in question, and the legal questions involved in drawing specifications and claims where the art is new, or progressive, or complicated, would well account for the intervening period between April and December; and in any view, and under any circumstances, impressions based on delays on the part of busy lawyers or of hard-pressed courts count for little against positive evidence. It is true that Mr. Page testifies that during the intervening period he was making investigations; but this is easily reconciled with his positive statement that he fully understood the invention, because in the then existing state of the art, and the then supposed importance of the patents, a careful solicitor would have made every possible preparation for drawing these specifications and claims.

With reference to the apparent lack of supporting proofs on the part of the complainant to which we have referred, and which has been very much pressed against it, the position of the complainant

is a hard one. It is stated by Mr. Page that he testified on an interference in the Patent Office between Ferraris and Tesla. This must, of course, have been before the patents in suit issued, resulting favorably to them. It also appears, by the decisions of the various courts with regard to Tesla's patents, that from the time of the issue of the patents now in suit, in December, 1893, until the decision of the Circuit Court of Appeals for the Second Circuit, according to the opinion passed down on February 25, 1903, a period of nearly 10 years, they had prevailed in whatever litigation they had been subjected to. The very question of anticipation which we are considering, submitted on proofs all of which, so far as favorable to the complainant, are before us, was, after apparently a thorough and careful examination, decided in favor of the complainant by Judge Lacombe in the opinion passed down on August 22, 1901. The same defense was abandoned after proofs were taken in the case in the Sixth Circuit, which terminated in the opinion filed on November 5, 1902. It is true that the respondent says the Ferraris publication was neither in issue nor in evidence in the Sixth Circuit. Judge Lacombe, however, says the evidence was taken there, but that the point was not argued, thereby implying that it was abandoned, as we have said. Therefore, under the circumstance of submitting the present case to the Circuit Court at a date following litigation which had resulted favorably to the complainant, but preceding the adverse decision of the Circuit Court of Appeals for the Second Circuit, it is not singular that the complainant was led to the belief that it might rest securely on the proofs previously produced; and it affords no reasonable presumption against it that it did so rest, or that it did not strengthen its case in the way in which the respondent claims it might have done.

Inasmuch as the respondent did not make specific and clear objections at the time when it should have made them, if it intended to rely thereon, we give no weight to the general objection interposed at the close of Mr. Page's testimony, in the following language:

"Testimony objected to, in whole and in part, as incompetent and insufficient on the issue of priority of invention."

In no view of the rules relating to objections with reference to testimony produced in federal courts can one so sweeping as this have effect, unless it is apparent that the facts intended to be proved in whatever form produced, could have no weight. The reason for this will be illustrated as we examine the specific propositions in regard to Mr. Page's testimony which are brought to our attention by the respondent, and which this general objection may possibly have had somewhat in contemplation. One was as follows: We are pressed with the fact that instead of stating what Tesla said to him, or the substance of it, thus giving details from which the court could draw its own inference whether or not Tesla's exposition was a sufficient one, Mr. Page testified as follows: "Mr. Tesla also described to me the plan of operating these motors," etc. Again he testified: "Mr. Tesla thereupon disclosed to

me his scheme for operating the motors," etc.   Undoubtedly, according to the rules of the common law with reference to the production of evidence, under which some are restless because they seem to them too strict, but which, nevertheless, are just because adapted to elucidate the facts, and to separate them from mere theory or speculation, this method of testifying would not be admissible.   Mr. Page should have been asked what Mr. Tesla said to him.   If he could not remember that exactly, then what was the substance of what he said.   Yet, if the respondent had desired to control the method of testifying according to those rules, it should have interposed specific objections at the proper times.

So, also, with regard to a diary entry of April 18, 1888, testified to by Mr. Page as covering a charge for services in the matter of the invention in issue, thus absolutely preceding the Ferraris publication.   It is true that, according to the proper rules of testifying, he should have stated, so far as he could remember, the precise words that appeared on his diary, or, failing that, the substance of them.   But, as no seasonable proper objection on this point was made by the respondent, it stands precisely as the testimony of Mr. Page concerning Tesla's disclosure.   Under the circumstances we would do injustice, and would co-operate with the respondent in depriving the complainant of substantial rights by reason of its being lulled into this peculiar method of questioning of this important witness, unless we assume that, on an examination of him in accordance with the proper rules of educing evidence, the substance of his testimony would not have been changed.   Of course, we cannot assume this.   No substantial attempt was made to impugn Mr. Page on cross-examination or by contradictory proofs.   Therefore, so far as he has testified positively, we must accept his evidence, notwithstanding the unsatisfactory form in which it appears, subject only to the general safeguards required in Brooks v. Sacks, 81 Fed. 403, 405, 406, 407, 26 C. C. A. 456, already stated. Consequently we have only two questions here:   Are there any such safeguards in the record? and did Tesla disclose such a conception as the rules of law require should be disclosed in order to anticipate the Ferraris publication?

As to the first proposition, we have, as we have already said, the positive date fixed by the application of May 15, 1888.   This not only proves what occurred on that specific day, but it carries with it all the reasonable probabilities which give effect to Mr. Page's evidence as to connected or related events.   The patent applied for on May 15 leaves no doubt that, on or before that date, Mr. Page had been advised by Tesla fully of the method by induction, and so fully as to meet any possible criticism.   Of course, the respondent at once suggests that which naturally suggests itself to every one— the failure to include the entire conception.   The fact that in that application nothing was said about the method by derivation, or self-induction, creates an impression against Tesla.   This impression, however, is met by the positive testimony of Mr. Page that, when Tesla first described to him his scheme covered by the application of May 15, he also described the plan of operating motors

which involves the splitting of a circuit into two branches of different electrical characters. This can mean nothing except the method by derivation, or self-induction. Therefore, as against this adverse impression, and every adverse impression, so long as they rest on mere probabilities, we have the direct, uncontradicted testimony of Mr. Page, which should ordinarily prevail. The date of May 15 is established beyond doubt; so that, under the circumstances we have stated, we can reject neither the date nor the substance of what was said. In other words, to use the language of the decisions to which we have referred, and to describe the state of our own intellectual condition, we are satisfied, we may say beyond a reasonable doubt, that the whole substance of the entire subject-matter of the two patents in issue was disclosed by Tesla to Mr. Page as early at least as May 15, 1888.

Mr. Page drew the application of that date; and, looking at all the circumstances, to any one cognizant of the preparation which a solicitor would naturally apply to that particular work, it would seem in accordance with the probabilities that the disclosure made by Tesla on which the application was based was a matter at least of weeks prior thereto. It might well be presumed of months. Therefore the reasonable probabilities support any statement by Mr. Page that this disclosure was made at least as early as the date he names, April 18. Consequently, we have a date which he claims to fix by his diary, April 18, with the reasonable probabilities in its favor. Agreeing, as we have shown that we must agree, that Tesla disclosed to Mr. Page his entire invention at the same time he disclosed it so far as it related to the method by induction, it would be almost contrary to good sense to maintain, against even the slightest degree of proof otherwise, that the disclosure by Tesla did not antedate the Ferraris publication, the gap being only 23 days. Therefore, in view of the fact that we have a positive date, May 15, which cannot be controverted, and an alleged date, shown by Mr. Page's diary, of April 18, which he directly connects with this particular topic, the presumptions are so strong in favor of a date at least as early as April 18 that, in the absence of any weighty contradiction, Mr. Page's statement in reference thereto must certainly stand.

We must also bear in mind that Mr. Page's testimony is not properly within the spirit of the characterization which has been given it, to the effect that it related to events which occurred 12 years before, accompanied with the statement that the only means which the witness had for refreshing his recollection was a diary which had been lost. On the other hand, the witness testified that he refreshed his recollection from his own evidence given on previous occasions, the first of which was with the diary in his hand on the interference in the Patent Office between Ferraris and Tesla. That testimony, according to the practice of the Patent Office, was carefully preserved, and might well have been accepted by Mr. Page at any subsequent date as stating correctly all the facts as they stood in his memory when it was presumably clear in reference to them. Also he testified in the case decided by Judge

Thompson, heretofore referred to, and again in the case decided by Judge Lacombe. Therefore his evidence is subject to the observation which we made in regard to the testimony of Mr. Cox in Brooks v. Sacks, 81 Fed. 403, 406, 26 C. C. A. 456. As to that we said that as his account of the facts was continuous from the time he first saw the device in question, and as he had an interest in the matter from that time, his testimony would be very convincing, provided there was anything by which it could be ascertained from collateral events that he had not confused the dates. This condition is met here with reference to Mr. Page's testimony, as we have shown.

In addition to all the above, there is a certain atmosphere of probability in support of Tesla's invention which materially strengthens the complainant's case and supports it throughout. Here was an invention which, if it was an invention, was of such a character that, notwithstanding the parties are at issue in regard to the extent of its practical value, it promised and accomplished great pecuniary advantage. Yet it must be conceded, as is apparent from the general tone of the whole record, and from the way in which the case has been developed before us, that the patent was long acquiesced in. It is also certain from the testimony in the case that an interference was declared between Ferraris and Tesla, and decided in favor of the latter. While, of course, such decisions are not formally operative as between other parties, as we have shown in Wilson v. Consolidated Store Service Company, 88 Fed. 286, 31 C. C. A. 533, especially when, as in the present case, courts are not advised what the nature of the contest was, or even whether it was a real one, yet such issues, when determined, necessarily contribute, with other adjudications, to make up the body of expert and legal opinion which goes to show that the patent has been approved or acquiesced in by those who understand its relations to the art. Although such general judgment cannot be measured by the law, yet it must be conceded that it has its weight, especially with regard to the state of the art at a period some years remote. In some cases, after a long lapse of time, it is the most reliable test in reference thereto; and, in any event, it affords material support to the patentee on issues of fact of the kind at bar, relating to occurrences as to which so many years have gone by. In the present case there is sufficient of this to balance all the mere probabilities in favor of respondent to which we have referred, and to give support to the evidence of Mr. Page; so that, taken all in all, we are secure in accepting the latter as stating the substantial truth of the situation.

The respondent insists that, conceding that Mr. Page is correct in his dates, and that Tesla disclosed to him all he says he disclosed, yet it was not a sufficient disclosure under the rules of law. The opinion of the Circuit Court of Appeals in the Second Circuit seems to tend in the same direction, although, from the standpoint of that court, it was not necessary that it should carefully consider this proposition. We have made no reference to Mr. Brown's testimony because, under the rules of Brooks v. Sacks, and in view of

some statements which Mr. Page says Tesla made to him, it may be that Mr. Brown did mistake the dates. But, referring both to Mr. Brown's testimony and Mr. Page's, the respondent claims, in effect, that Tesla's disclosure was unavailing unless made so concrete and specific, and with such particularity in detail, that it might be studied and understood, and, if desired, reproduced and tested. The respondent, also, observes that Tesla did not describe any specific structure or specific result, and did not negative very clearly that he had got beyond a wholly experimental stage. The language of the Circuit Court of Appeals for the Second Circuit is substantially to the same effect, namely, that all which Mr. Page learned from Tesla was the general features of the invention involved at bar. It meets all this to a demonstration to say, in view of the nature of the Ferraris publication, that his disclosure also was academic if Tesla's was. But the nature of Tesla's broad invention, as we have explained, to the effect that it consisted in the conception of making practical use of a single current, and that the rest concerned merely working that out by well-known and equivalent methods, was such that when he disclosed that conception he made a complete disclosure. Moreover, we have shown that, in the way in which the respondent was satisfied to leave Page's testimony, we must accept his statement on this topic exactly as he made it. This was to the effect that Tesla described to him, and that he understood fully from his description, the practical and essential features of the invention involved in the patents in suit, and that Tesla also described to him the particular method of operating motors by derivation.

A broader view might be taken of this topic. Undoubtedly, the application filed on May 15, 1888, to which we have fully referred, clearly made known Tesla's single circuit operated by the method of induction. It is almost incredible that Mr. Page could have prepared this application without a disclosure necessary therefor having been made to him several weeks before it was filed, and, therefore, as we have said, almost against common sense to dispute a date not earlier than April 18. So far the path seems entirely clear. Both parties, as we have shown, have stated emphatically that the method by induction and the method by derivation, or self-induction, were at that time well-known equivalents. If Tesla had rested on the patent issued on the application of May 15, it would seem, therefore, according to well-known rules, that the respondent would infringe by using the method by derivation, or self-induction. If, therefore, the patents in suit had not been taken out, the defenses of anticipation and noninfringement, so far as infringement relates to the method by derivation, would fail. In view, however, of the fragmentary method of taking out the Tesla patents to which we have referred, and in view of the possibility that Tesla and his assignees may thus have estopped themselves from adopting this simple line of maintaining their positions, we have felt it safer to examine Page's testimony as we have, and to state our conclusions therefrom. In either view, we must express ourselves entirely satisfied that whatever was disclosed by the patents in

suit covers patentable invention and anticipated Ferraris. This leaves us only the question of infringement.

It was stated at bar that the original infringing machine was manufactured under a patent to Otto Titus Blathy, No. 423,210, issued on March 11, 1890, and that it is marked as manufactured under that patent, and was made in accordance therewith. It is therefore safe to refer to that patent for a statement of its substantial elements and operative principles. It is entitled "Electric Meter for Alternating Currents." Subject to the single topic which we will discuss hereafter, it does not seem to be denied that the respondent uses what distinguishes the patents in suit from the Tesla polyphase patents issued on May 1, 1888. The proposition of the defense seems to be that the patents in suit involve a combination with the motors described in the earlier patents. It seems impracticable for the respondent to take any other position. The specification of the Blathy patent describes his invention as follows:

"This meter, essentially, consists of a metallic rotating body (such as a disk or cylinder, for instance) which is acted upon by two magnetic fields or two groups of fields displaced in phase from one another. The said displacement of phases results from the fact that a field or one group of fields is produced by the main current, while the other field or group of fields is excited by a coil of great self-induction shunted from those points of the circuit between which the energy consumed is to be measured."

Compare this with the claim of patent No. 511,560, in suit, already quoted by us, as follows:

"(1) The combination with a source of alternating currents, and a circuit from the same, of a motor having independent energizing circuits connected with said circuit, and means for rendering the magnetic effects due to said energizing circuits of different phase, and an armature within the influence of said energizing circuits."

Inasmuch as the extract we have made from the Blathy patent shows the method by self-induction, admittedly the equivalent of that by derivation, and inasmuch as, in view of the word "connected" in the claim quoted from patent No. 511,560, the latter may well be held to be limited to the same method, as we have already said, that claim and our extract from Blathy literally read into each other if a motor is supplied to the latter. This is done by Blathy's claims, each of which contain the element of a counting apparatus operated by the rotating body described by him.

But a distinction is attempted between Blathy and the infringing device in accordance with what further appears in his specification, following what we have already quoted, thus:

"The magnetic fields, however, do not cross one another within the solid of revolution, as in the well-known arrangement of Ferraris, but pass the different parts of the same independent from one another."

In view of the fact of the parallelism between the description of the Blathy invention shown by the extract which we first made from his specification, and of the further fact that the respondent attempts no distinction except in the direction thus afterwards particularized, it becomes necessary for the respondent, in order to escape the charge of infringement so far as this topic is con-

cerned, to maintain two propositions: First, that the so-called Tesla motors are necessarily involved in the patents of May 1, 1888; and, second, that the invention covered by the patents in suit, as expressed in the claims of those patents, make such Tesla motors an essential element. If the respondent fails to maintain either one of these propositions, it is apparent that the defense of infringement, so far as this topic is concerned, fails.

The first patent of the series to which those now in suit relate is No. 555,190, issued to Tesla on the application filed on May 15, 1888, to which we have several times referred. It is sufficient as to that to say that, while possibly the words "as set forth" in each claim might be construed to refer to the various drawings which exhibit the Tesla motors, yet this is not a just construction in view of the breath of the conception shown in that part of the specification wherein Tesla stated that he was "the first to produce any kind of a motor adapted to be operated by alternating currents, and characterized by any arrangement of independent circuits brought into inductive relation so as to produce a rotary effort or effect, due to the conjoint action of alternating currents," "and this without reference to the specific character or arrangement of the currents in the motor." Clearly, this phraseology has no relation to any particular form of motor. The words "as set forth" in the claims may grammatically refer to anything which precedes them. Therefore, in view of the just and liberal rules of construction stated in Reece Button-Hole Co. v. Globe Button-Hole Co., 61 Fed. 958, 10 C. C. A. 194, they should not be held as restrictive, or as limiting anything in the claims, so as to render ineffectual any part of the conception involved in the portion of the specification which we have quoted.

Coming now more particularly to the patents now in issue, the first claim of No. 511,560 contains in its letter no reference to any particular motor, and thus the letter of the claim corresponds with the sense of the invention. Tesla was the first to use for practical purposes, with reference to any kind of a motor, what is called in this case the "split-phase," or a single current from the generator producing two energizing currents on the methods of derivation or induction. This novel feature is, of course, equally applicable to Baily or Blathy, or to any other person using two energizing alternating circuits, without regard to the peculiarity of the motor in other respects; and we repeat that the sense of the invention is equally broad. It is true the specification mentions Tesla's system of electrical power transmission, but it contains no expression which would justify any court in limiting the clear language of this claim, fully capable of supporting itself, except so far as it uses the word "connected," which may well limit it to the method by derivation, as we have already said. Therefore, in order to maintain the proposition that the invention as set forth in claim 1 of this patent is as broad as the natural sense of the language declares it to be, it is not even necessary to refer to the just rules of construction given in Reece Button-Hole Co. v. Globe Button-Hole Co., ubi

supra. It is asking altogether too much of a court of law to demand of it that it should inject into this claim words which it does not contain for the purpose of limiting it as the respondent seeks to do.

An elaborate discussion of the patents issued to Tesla on May 1, 1888, is not necessary. It is necessary to examine them, but only so far as they show the state of the art; and in this respect, for the purposes of the patents in suit, the Baily publication and all the other references of the respondent are equally a part of the state of the art at the time those patents originated. We are to consider the invention in issue at bar as though it were made by somebody other than Tesla, having knowledge of the state of the art in reference to putting into a motor currents of different phases. The complainant defines it with sufficient accuracy for all present purposes when it maintains thus:

"This invention, stated in its simplest form, was based upon the conception that, instead of employing two independent sources of current and two transmission circuits between such source and the motor, one might employ but a single source, and a single circuit leading to the motor; at the latter, divide the circuit into two paths, and, by artificial means, retard the current in one of those paths to a greater extent than the other." "No useful application of the principle of artificially retarding alternating currents had ever been proposed until Tesla conceived the possibility of operating a two-phased motor from a single circuit, turned the principle to a useful account. and demonstrated that the retardation, so fatal to the successful operation of the ordinary alternating current systems, was the keystone of success in a great engineering problem."

It is not necessary for us to discuss whether what Tesla applied his inventive ability to was a "great engineering problem," as described by the plaintiff; but it was a problem practically unsolved in the then state of the art, and of such a character that its solution was certainly a useful one. Therefore the invention, according to settled rules, is to be protected to its fullest extent unless something of a positive character, either in the patent itself or elsewhere, prevents. It is true that Tesla's specification indicates strongly that he probably had not in mind the application of his invention to any motors except his own. Possibly he valued no other two-phased alternating current motors, or he conceived that there were no others, so that naturally the practical application which he had in mind was limited accordingly. Nevertheless he is entitled to the advantage of the well-settled rule by virtue of which an inventor who has patented his invention is entitled to all the uses to which it may be applied of the class to which he himself practically applied it. Therefore we do not perceive how, on any rule relating to the fundamental nature of inventive conceptions, or to the construction and effect to be given to specifications and claims in patents for invention, it can be held that the respondent can escape, for any reason we are now discussing, the charge of infringement.

Our observations so far have been more particularly with reference to the phraseology of the only claim of patent No. 511,560 in issue. The claims of patent No. 511,559, so far as the topic we are discussing is concerned, are as broad as the single claim of patent No. 511,560.

It is true they contain the words "as herein set forth," which are not found in the other patent; but these words connect directly with the words "independent energizing circuits," and they do not necessarily relate, either grammatically or by any reasonable demands of the rules of construction, to any particular description of motors. Therefore, within the rules stated in Reece Button-Hole Co. v. Globe Button-Hole Co., ubi supra, by virtue of which all expressions in specifications or claims are to be held to sustain the actual invention so far as they can reasonably be so construed, this one does not stand in the way of our giving, so far as the topic we are discussing is concerned, as broad a construction to patent No. 511,559 as to the claim of patent No. 511,-560 in issue.

The difficulty which presses itself upon us on the question of infringement grows out of the fact that the amount of power used by the respondent is approximately what is described by it as negligible; that is, very minute. Nevertheless it is power developed, as set out by Blathy's claims, by "a metallic rotating body," and transmitted to a "suitable counting apparatus, operated" by the same rotating body. If the device stopped with "a metallic rotating body," and some method other than a counting machine operated by it was used for determining the number of its revolutions, we might not be able to charge the respondent with infringing. We might then well apply the proposition of the respondent that a mere meter is in a different art from a motor; but, as it does not stop there, we must look further.

The Tesla invention in issue, as already explained by us, derives its right to recognition from the fact that it was applied to the production of power. In that respect it falls within the limited class referred to or described by us in Davey Co. v. Isaac Prouty & Co., 107 Fed. 505, 509, 510, 511, 46 C. C. A. 439. The adaptation of the tortional spring which laid the basis of Western Electric Company v. Larue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294, was a marked instance of this class of cases. The ingenuity of Tesla was displayed in the conception of an adaptation to a particular use, and any adaptation which did not involve that conception could hardly infringe. Therefore, as it may well be that, if the counting mechanism was of a kind not operated by the "metallic rotating body," we should not be compelled to find infringement, we hesitate in view of the minute amount of energy exerted. But Blathy did not merely reproduce the academic experiments which must have preceded Tesla. While Tesla uses the word "power," he makes no maximum nor minimum; and it is entirely conceivable that for certain fine work, or work of a peculiar character, the minimum may be of the utmost value. Therefore we are unable to make any distinction on this account.

Probably we ought to refer to what is spoken of by the parties as Baily and Deprez. We apprehend that Deprez is disclosed by what is known as "Deprez French Patent of 1879," and that Baily is represented by the article in the Philosophical Magazine of October, 1879. These are each relied on by the respondent. Baily was seeking simply a revolving disk, and not looking beyond that. He did not attempt to transmit that electrical power which, as we have shown, was the soul

of Tesla's invention, and which we have also shown is involved in the infringing device, although perhaps to a minimum. It is apparent, also, that Baily did not concern himself about alternating currents as such, and it is not at all clear that he proposed to make use of them at all. Deprez, on the other hand, made commutators necessary elements in his device, which essentially distinguishes him from both the complainant and respondent, and lays him out of the case without the necessity of further discussion.

Possibly, relating to some other infringers than those at bar, we might be compelled to determine more positively than we have the construction of some of the claims which are put in issue here pertaining to the two patents in suit. For the present case, however, any further investigation or discussion relating to them would be purely academic and of no practical importance. The infringement by the respondent relates entirely to the method by derivation, or self-induction, which, for present purposes, are the same; and, so far as that is concerned, it can make no possible difference as to practical results whether the injunction and accounting relate to all the claims in issue or only to one or two of them. Therefore, in view of the construction which we are now inclined to give the claims, as already stated, we hold that the relief granted should relate to all.

We wish to call attention to the fact that at various points the respondent has referred to the affidavits filed in connection with the motion to the Circuit Court to reopen the case, as though they were adverse to the complainant, and especially as though contradicting, in one important particular, the testimony of Mr. Page. On the other hand, at some points, the complainant has undertaken to strengthen its case by reference to the same affidavits. We reject all these, and open the record only so far as it is properly before us. To do otherwise would be to enter on a field which has not been explored by the parties according to proper rules of procedure.

The decree of the Circuit Court is reversed; the case is remanded to that court, with instructions to enter a decree in favor of the complainant for an injunction and an accounting, and to take such further proceedings as may be required not inconsistent with this opinion; and the appellant recovers the costs of this appeal.