### MASURY et al. v. BELL.

(Court of Appeals of District of Columbia. Submitted May 13, 1925. Decided June 1, 1925.)

No. 1754.

1. Patents ⊕⇒91(4)—Evidence held insufficient to show junior parties in interference proceeding entitled to priority.

Evidence *held* insufficient to show junior parties in interference proceeding entitled to priority in invention of suspension link of flexible, inelastic, nonmetallic material for use in connecting springs of automobiles to chassis frame.

2. Patents ⊕⇒91(1)—Junior parties in interference proceeding have burden of proving priority.

Junior parties in interference proceeding have burden of proving priority.

Appeal from Commissioner of Patents.

Interference proceeding between Harvey W. Bell, senior party, and Alfred F. Masury and another, junior parties. From a decision of the Commissioner of Patents, awarding priority to senior party, junior parties appeal. Affirmed.

See, also, —— App. D. C. ——, 6 F.(2d) 709.

W. A. Redding and W. B. Greeley, of New York City, and H. H. Semmes, of Washington, D. C., for appellants.

J. H. Milans and C. T. Milans, both of Washington, D. C., and Albert C. Nolte, of New York City (Edmund Quincy Moses, of New York City, on the brief), for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in an interference proceeding, awarding priority to the senior party, Bell.

The invention is a suspension link of flexible, inelastic, nonmetallic material used in connecting the springs of automobiles to the chassis frame. Count 1 of the two counts is sufficiently illustrative and reads as follows:

"1. In automobile construction, in combination with the metallic frame of the chassis, the axle and a metallic spring thereon, a flexible inelastic nonmetallic strip secured fixedly to the end of the spring and secured fixedly to the frame whereby the frame is suspended from the spring by a nonmetallic connection and said connection which is free to flex intermediate its ends is maintained under tension."

[1] Bell conceived, disclosed, and reduced his invention to practice about February 13, 1920, and filed his application on March 4th following. In April of 1920 he fully disclosed his invention to the junior parties, who then not only made no claim that they were the inventors, but spoke disparagingly of the utility of the device. Their application was filed on May 27th following. They claim to have conceived and disclosed the invention on January 24, 1920, and rely upon the testimony of a Mr. Campbell, given more than three years after the occurrences involved, and without the distinct recollection of the witness. This testimony was based entirely upon the following diary entries:

"January 24, 1920.—International Motor Co.—Time spent at the office of the company with Mr. Masury and Mr. Leipert in regard to inventions relating to improved cooling systems and a yielding link connection for automobile construction."

"January 26, 1920.—Alfred F. Masury (Personal).—Preliminary search and report on patentability of yielding link construction for automobiles."

"February 19, 1920.—International Motor Co.—A. F. Masury substituted.—Preliminary search and report on patentability of fabric brake rods."

The Assistant Commissioner has this to say concerning the testimony of Mr. Campbell:

"It clearly appears that Campbell did not have any distinct recollection that the particular invention here in issue was disclosed to him on January 24, 1920, but was relying entirely upon the entries on his time sheets to fix this date. Campbell testified on February 28, 1923, and it is obvious that he ordinarily would not have remembered that a particular disclosure was made to him on a particular date more than three years prior to the time that he was testifying. But there is an additional reason why he would not remember. It appears from Masury's testimony that the International Motor Company

was filing through this same firm of attorneys about 40 applications a year and that it was having many more preliminary searches made for various alleged inventions. These facts render it uncertain just what construction was referred to in the notation of a preliminary search on January 26, 1920.

"Masury testifies that certain blueprints, which are in evidence as Exhibits Nos. 5 and 6, were sent to Campbell, or to the firm of which he is a member; that he does not remember the date when they were made, but that he should imagine they were made a few days before they were sent with the letter (question 53), which letter he explains, in answers to questions 54 and 55, was preliminary to having a search made in the Patent Office. But the Exhibits Nos. 5 and 6 are undated. Masury cannot recall when they were actually made, and the letter claimed to have been sent with them is not produced.

"Campbell testifies that the preliminary search on this invention was made and that a report was received from their Washington associate. Again this testimony is not corroborated by any one as to time. Not only is the letter from Masury to Campbell not produced, but the letter to the Washington associate, asking for a preliminary search, is not in evidence; neither is the report of the Washington attorney on that preliminary search submitted. Surely some of these letters should be produced. Furthermore, even the time sheets to which Campbell referred were not placed in evidence, and it does not appear from the testimony whether preliminary searches on other forms of inventions relating to an improved cooling system and 'a yielding link connection for automobile construction' were made, or not. It is difficult to deduce any dates at all from such unsatisfactory and unsupported evidence."

Moreover, in their present application the junior parties refer to "a copending application," showing and describing "a cushioned connection for vehicle construction, which is made up of a relatively stiff fabricated block, the base of which may be of rubber or other resilient material, impregnated with cords or the like, to form essentially a fabricated structure which, while yielding, possesses strength and durability." It is then said: "The present invention is concerned with the provision in vehicle construction of flexible connections of nonelastic character." As originally filed, the word "yielding" was used, instead of "elastic," so that the specification read "flexible connections of non-yielding character."

[2] It thus appears that this diary entry well may have referred to the invention disclosed in the copending application and not here involved. In addition, according to the contentions of appellants, the blueprints (Exhibits 5 and 6) were in existence when the directions to file the application were sent, and yet they were not sent to the draftsman, but, instead, a crude and undated drawing, exactly like the drawing and construction disclosed to the junior parties in April, was sent. The burden of proof was upon the junior parties, and they have failed signally to sustain it. See Hisey v. Peters, 6 App. D. C. 68, 71; Huff v. Gulick, 38 App. D. C. 334; Westinghouse Elec. & Mfg. Co. v. Catskill, etc., 121 F. 831, 58 C. C. A. 167; Graves v. United States, 150 U. S. 118, 14 S. Ct. 40, 37 L. Ed. 1021.

For the reasons more fully stated by the Assistant Commissioner, the decision is affirmed.

Affirmed.