AMERICAN OPTICAL CO. et al. v. SHUR-ON OPTICAL CO., Inc.

SAME v. KIRSTEIN OPTICAL CO., Inc.

(District Court, W. D. New York. August 5, 1925.)

I. Patents ⬅➡328—1,219,254 and 1,366,768, for process for making celluloid eyeglass frames and for eyeglass frames, valid and infringed.

Clulee patents, No. 1,219,254, March 13, 1917, claim 8, and No. 1,366,768, January 25, 1921, claims 1, 2, and 3, for process for making celluloid eyeglass rims or spectacles and for eyeglass frames, respectively, *held* valid and infringed.

2. Patents ⬅➡120—Patenting of method and product held not double patenting.

Patenting of method for making celluloid eyeglass rims and of the product eventuating from use of such method *held* not double patenting.

3. Patents ⬅➡91(3)—Quality of evidence necessary to establish prior invention stated.

Evidence sufficient to establish prior invention must be clear, positive, and unequivocal, and leave nothing to speculation or conjecture.

4. Patents ⬅➡286—Defect in assignee's title to patent held not established.

Plaintiffs, as assignees, *held* not without title to patent sufficient to support infringement suit, in view of confirmatory assignment, referring to a previous assignment which had been lost or mislaid.

5. Patents ⬅➡328—1,384,862, for bridge or mounting for spectacle frames, invalid.

Schumacher & Boutelle patent, No. 1,384,-862, for bridge or mounting for spectacle frames, *held* invalid for want of invention.

Patent infringement suits by the American Optical Company and others against the Shur-On Optical Company, Inc., and

against the Kirstein Optical Company, Inc., tried together. Decree holding certain patents valid and infringed by both defendants, and another patent invalid.

Frederick F. Church, of Rochester, N. Y. (Charles Neave, of New York City, Harrison F. Lyman, of Boston, Mass., and H. H. Styll, of Southbridge, Mass., of counsel), for plaintiffs.

Davis & Simms, of Rochester, N. Y. (Percival D. Oviatt, of Rochester, N. Y., of counsel), for defendants.

HAZEL, District Judge. These two suits in equity, brought by the American Optical Company, an unincorporated association, involving the infringement of patents of Stephen J. Clulee, No. 1,219,254, of March 13, 1917 (application filed August 16, 1916), and No. 1,366,768, of January 25, 1921 (application filed June 1, 1918), the earlier relating to the process of making celluloid eyeglass rims or spectacles, and the latter to a new article of manufacture, to wit, eyeglass frames, and patent to Schumacher and Boutelle, No. 1,384,862, for the bridge or mounting of spectacle frames, were, pursuant to stipulation of the parties, tried together. The defendant Shur-On Optical Company, Inc., is defendant in both suits, involving all the patents, as maker of the spectacles in question, while defendant Kirstein Optical Company, Inc., dealer or seller, is charged with infringement of the two last-mentioned patents only.

The first-mentioned Clulee patent relates to the process of manufacturing eyeglass rims of the celluloid or zylonite type (zylonite, or zyl, for short, is a form of celluloid), which concededly have salable advantages over metallic spectacles, in that they do not tarnish or discolor, as metallic frames are apt to do. This type in general—the so-called horn rim type—has also become popular with users because of their marked appearance. The eighth claim only is involved, and reads as follows:

"An art of the character described, which comprises forming an elongated member from celluloid with a longitudinal groove therein, inserting a metallic wire within said groove, and rolling said celluloid member to force said metallic wire into interlocking relation therewith."

The specification states:

"In the preferred method of carrying on my art, the celluloid is hardened after extrusion, and there is then inserted a metallic wire 3, which is fitted snugly at the bottom of the recess 2, and runs through the entire length of the celluloid wire 4. The material is then run through suitable rolls, by which the celluloid is forced into a properly uniform cross-section of the desired contour. This action, moreover, embeds the metallic wire 3 with the celluloid projecting thereover, as indicated at 5, and locking the metal wire in position. It is to be understood that this rolling step is preferably employed, even though no metallic wire is inserted."

Three essential steps of the process are included in claim 8: (a) Forming an elongated member or rod from celluloid or zylonite; (b) placing therein a longitudinal groove and embedding therein a metallic wire; and (c) rolling or pressing the celluloid material in its plastic state to firmly hold the wire in the groove. The various defenses are that the patents in issue are invalid for want of novelty, anticipation, double patenting, estoppel, denial of title as to patent No. 1,366,768, and noninfringement generally.

The claim in issue, as indicated in the specification, is limited to a zylonite eyeglass construction having an inside channel or groove with a metallic wire embedded therein, both the rim and wire interlocking throughout their lengths. It was regarded as somewhat of a problem as to the best manner of securing the zylonite material in place, since it is subject to shrinkage or expansion. It is also very fragile and delicate, which often caused the rims to break. Whether the ends of the rim should be mechanically joined to the wire, or whether the edges of both should clasp or interlock to strengthen and sustain the rim throughout its length, were various means presented for attaching the ends to the rims. The patentee adopted the latter idea. It was not simply a question of making a composite rim of celluloid and reinforcing wire, for concededly there was nothing new in that idea, but to give a desired appearance to the rim by concealing the wire, and at the same time affording protection from distortion by correlating the rim and wire, to keep the material firmly in place, is believed to have been a new and novel concept, which, in a limited way, advanced the art and rendered this type of spectacle more salable. The patentee accomplished his object by putting the wire within the inner groove of the material and rolling the edges of the groove to overlap the wire, thus securing firmness to the parts throughout their length. The art, as the evidence shows, was concerned with the manner of fastening the

end pieces of zylonite rims in its effort to overcome the stated deficiency.

The Stevens, Day, and Day & Carson patents for nonmetallic eyeglass rims, to which further reference will herein be made, were involved in litigation in the First circuit, and both sides draw attention to the decision of Judge Brown, of the district of Rhode Island, in American Optical Co. v. Universal Optical Co., affirmed (C. C. A.) 265 F. 925, as having an important bearing on the questions presented here. It was held in that case that prior inventions showing hair pins, martingale rings, and spectacle temples with reinforcing wire were not material reference either to limit or anticipate the Stevens patent; that these articles were strangers to a composite celluloid eyeglass rim and a metallic reinforcing element, since they related to a special class of structures wherein the material was inherently brittle and fragile, resulting in new problems for stabilizing the rim material. This view of such structures, in my opinion, was correct, and accordingly they are not regarded as cogent or persuasive references against the Clulee patents in suit. In this case it has been proven that from the time zyl eyeglass rims became the fashion, they taking the place of metallic or shell rims, various inventors have tried to make them so as to give the appearance of all zylonite rims—an appearance demanded by the public —and primarily to overcome the inherent distortions in the rims and extend their usefulness.

Stevens, in his patent, No. 1,177,367 (application filed January 12, 1916), shows nonmetallic rims (shell or celluloid) provided with a groove for a thin wire reinforcement on the outside and another groove on the inside for the lens. It is undeniable that in his composite rim construction there is an approximation to the Clulee patents in suit. The important difference, however, resides in the fact that he placed the wire in the top or rear channel on the outside of the eye rim in his different forms, instead of on the inner side, and failed in either structure to provide means for interlocking the two parts throughout the length of the rim. His eye rims failed to fulfill the trade requirements, since in his earlier forms the display of wire on the outside impaired a desired all-zylonite appearance, but what was more important is that he failed in all his forms under his patent to fasten or secure the rims to the metal by interlocking them. The Stevens patent in the Rhode Island district case was held valid. It was the first, Judge Brown

said, to disclose metal rims embedded into celluloid rims for use in eyeglasses, so as not only to give them strength, but avoid destroying their identity or appearance as all-shell rims. It was not infringed, however, he ruled, by defendant's structure, since the claims were limited to eyeglass rims in which the wire surrounded the celluloid rim, instead of being surrounded by the celluloid, such as in the Windsor structure, which was the alleged infringing structure in the action on the Stevens patent.

In the action on the Day & Carson patent he ruled that no invention was shown, in view of the state of the art and the prior Stevens patent, by putting celluloid strips on a metallic spectacle frame, unless for the specific means of holding the strips together. Since there was no such limitation in the patent, defendant's eye rims, he held, were not an infringement.

The composite celluloid and wire rim was also in the mind of Day (patent No. 1,241,-716); but he, not wholly unlike Stevens, inserted the metal in a groove on the outside of the rim—making a complete circle of both elements—but he failed to get the effect and appearance of an all-shell rim, and, moreover, he provided no means for holding the rim and wire together, and hence it was subject to the inefficiencies of distortion that Clulee designed to remedy, and he also failed to get a desired all-zylonite appearance.

The Day & Carson patent (1,241,717, dated October 2, 1917) was designed to improve both the Stevens and the Day structures by placing the thin wire in a groove on the inner side of the zylonite rim; but the inventor did not place it in a groove in the rim material. In their embodiment the rim was embraced between the flanges on the wire, which was left visible from the front, and accordingly they also failed to get an all-zylonite rim for their spectacles. It is true the rim material was closely held in place by welding or heating the ends together and passing them through flared openings in the end pieces, but the feature of Clulee is not shown or suggested. In the Stevens structure, the rim and wire were closely held together when the lenses were in place; but, when they were in stock on the dealers' shelves, clamping metal washers were used in the lens openings to keep the rims from warping. The fastening idea of the rims and wire did not occur to them. Indeed, I find that none of the prior celluloid spectacles embodied Clulee's specific invention, and none overcame the infirmities to which they were subjected.

[1] It is not necessary to examine any other publications or structures that do not clearly relate to composite, nonmetallic rims with metal embedded in the center, for spectacles. Plaintiff claims that all other structures embodying the essential elements of the claims were followers of Clulee, who in fact had completed his structure prior to the filing of his application; that its completion was some time before November 19, 1915, while the date of the Stevens application was January 12, 1916, of Day, July 27, 1916, and of Day & Carson, August 11, 1916. Considerable testimony was given to substantiate prior conception and completion. But it is not believed necessary to determine the conflict that has arisen in relation thereto, since, assuming that the Stevens, Day, and Day & Carson patents were earlier, Clulee's process and construction, in my view, are patentably differentiated from them. The evidence persuasively shows that Stevens, Day, and Day & Carson failed to fully accomplish their objects, while the patentee herein, in a simple way, as shown in his specific construction, solved the problem that confronted makers of nonmetallic spectacle rims and improved the art. Even though it be considered that he was not the first to make composite rims with a wire insertion, he was the first to combine old elements in such a way as to eliminate impairments and produce a new and useful result. His claims are not broad, and he asks only for protection for the specific thing that he has done. I think he is entitled thereto.

The large number of sales by complainant, and generally the recognition given by the public and dealers to the Clulee form of rims, and the use of the process in suit for making them, is a cogent factor in determining their merit and commercial utility.

As to infringement: Defendant Shur-On Optical Company makes its spectacle rims of a tube of zylonite, the diameter being suitable for the purpose, with parallel grooves, spaced apart and cut into the peripheral surfaces from which the rims are formed and severed from the tube. The rims, after cutting them from the tube, are fitted over a metal wire, which is soldered to the end pieces and bridge of the spectacles, the metal wire being in appearance embedded in the inside groove of the rim, and the lenses, when in place, resting on top of the wire. The rim ends are made to join at the end pieces, and jointure is made secure by means of a suitable roller going over the edges, and a prong on the wire is made to fit into the groove at the ends, and

by beveling the edges the ends of the zylonite and metal are forced together. In this manner the interlocking feature of the Clulee patents is obtained. Defendants deny using an elongated member of celluloid in making its rims. It uses a form of celluloid ring, but the denial is thought untenable, since from its straight shape it was made ring-shaped, and the term "elongated member" includes its structure.

Claims 1, 2, and 3 of the article patent are involved, but it suffices to set out claim 1:

"In eyeglass construction, in combination, a composite rim comprising a nonmetallic rim member provided with a groove extending substantially throughout its length, and a metallic rim member in said groove extending substantially throughout its length, said nonmetallic member extending over said metallic member at the front and outer edges of the glasses, whereby said metallic member is invisible from the front and edges of the glasses."

The recited claim relates to a composite rim for an eyeglass, including a zylonite rim with a longitudinal groove and a metallic rim placed therein, extended throughout its length so as to secure an interlocking relation.

Claim 2 includes the inner walls of the groove and the outer surface of the wire contacting therewith, shaped to lock the wire against movement toward the open side of the groove, a nonmetallic member extending over the metal member at the front and outer edges of the lenses "to render the wire invisible from the front and edges of the glasses."

Defendant's denial that in its construction there exists an interlocking relation is unsubstantiated by the proofs. The Complainant's Exhibit 11, for example, of defendants' rim, shows an outer rim of celluloid and an inner metal rim. The latter is extended throughout the inner groove, thus concealing it from the front, and it has the firmness and strength of Clulee's structure. Its liability to fracture is lessened, distortion or warping of the rim is prevented, and the desired appearance retained. It is true the embedded metal is visible on taking the lenses from the grooves; but this is a minor difference, since the outside appearance is the same as in the rim of the patent and the same functional advantages obtained. The failure, therefore, of the groove edges to lap over the metal member, allowing the lenses to rest against it, is unimportant, especially as the prong at the ends of the metal en-

gages the zylonite, to prevent the rim from moving and the clasp at the edges serves to interlock.

There are also other minor differences in the frame of defendants' structure. In the structure of the patent the rivets are fastened to the end pieces by integral sleeves, a feature not mentioned in the prior process patent, while in defendants' frame the end pieces are soldered to the metal. The claims in controversy do not specify the means for fastening the rims to the frame, and infringement by defendants' structure is fairly established by the adaptation of the combination of a celluloid rim and the other two elements, by which substantially the same result is attained as in the Clulee product.

Numerous prior patents are emphasized in argument by defendants to show that the use of a reinforcing wire to strengthen the celluloid frame was old. Many were considered by Judge Brown in the American Optical Co. and Universal Co. Cases; but, in my opinion, none disclose the patentee's method of making the spectacle rims in question, and it is therefore held that the patented improvements were not anticipated. The prior patents to Leyers or Siesel, the former relating to wire hairpins and the latter to spectacle temples, have no important bearing, in view of the indicated limitation of the Clulee patents.

[2] The defense of double patenting and abandonment cannot prevail, inasmuch as the process patent relates particularly to methods of making the rims, while the article patent distinctively includes a composite rim—the article or product which eventuated from patent No. 1,219,254. The Patent Office required the separation of the original specification and claims, including the process and product, on the ground that they were separate and distinct. The first patent discloses different means for carrying out the object of the invention, and accordingly the claims of double patenting and abandonment for failure to claim the product are not sustained.

It is also contended that by the testimony of Messrs. Sweeney and Welch it is proven that in making the spectacles under the Stevens patent, No. 1,177,367, there was a departure to obtain interlocking between the zylonite portion of the rim and the wire in the groove. Welch's version is that the metallic member was made trapezoidal in cross-section while the zylonite was pressed against the lateral wall of the wire. He is, however, unable to give the date when this asserted departure was made. He thought, he said, that spectacles of that kind were made in the spring of 1916, which would be a year following Clulee's claim of reduction of his invention to practice.

[3] The testimony of Welch and Sweeney, unaccompanied by a record of such departure or alteration from the Stevens structure, is not satisfactory, and does not comply with the rule that evidence of prior invention must be clear, positive, and unequivocal, and that nothing must be left to speculation or conjecture. Thayer v. Hart (C. C.) 20 F. 693. The argument of plaintiff is not without force that, if a departure had been made, it would not have been necessary to supply the Stevens rims with instrumentalities to overcome warping or shrinkage of the celluloid. Indeed, the evidence shows that later on, when Stevens concededly adopted the interlocking feature, the use of washers was discontinued.

[4] Defendants also urge that there is a defect of title to patent No. 1,366,768, in suit, in that the patentee had not assigned his patent to plaintiffs' assignor, the Bay State Optical Company, before this action was commenced. A confirmatory assignment of May 15, 1923, in evidence, however, refers to a previous assignment of the patent by Clulee to the Bay State Optical Company, which had been lost or mislaid, and this reference prima facie corrects any deficiency of proof in this relation. To its reception in evidence there was no objection offered.

[5] I now come to the Schumacher & Boutelle patent, for mounting of spectacles of the type under consideration. Claim 1 reads as follows:

"An ophthalmic mounting, including a bridge bar having a seamless nonmetallic tube centrally disposed thereon and having exposed terminal portions projecting beyond the ends of the nonmetallic tube."

The second claim is narrower than the first, and specifies a tapering of the termini of the nonmetallic member, "to merge with the adjacent exposed portion of the bridge bar." The essential element of the claims is the bridge bar, having a seamless nonmetallic tube disposed thereon, with ends exposed. Defendants claim that the patent is anticipated by the prior art, and, in view thereof, does not disclose invention. The defense, in my opinion, is fairly established. The principal citation bearing upon the defense of anticipation is the patent of Day, No. 1,348,155, dated August 3, 1920, which concededly closely approaches the Schumach-

er structure. Both patents deal with a celluloid covering for the nose bridge. Day in his patent mentions two types of nose bridges. In Figures 5 and 6 he shows a celluloid covering for the bridge near the ends, with a gap towards and at the center, which rests upon the surface of the nose. The covering is tubular and seamless, and molded around the metal bridge, which is connected to the lenses (Fig. c.); while in Figures 1 to 4 he shows a curved zylonite pad under the metal bridge, which rests in a groove on the upper surface of the pad, both bridge and pad being connected by passing the metal bridge through holes in the pad at the ends.

In the Schumacher patent the covering is tubular, and extends across the entire length of the bridge, without any space or gap towards the center; but this change was not a patentable departure. The Molitor patent discloses a seamless covering on the lower part of the clamping bars of the eyeglass, which serves as a cushion or pad, and seamless tubes of celluloid, in which a wire is inserted, are also shown in the patent of Roos for hairpin construction—structures that would seem to suggest inserting a metal in a nose bridge of celluloid. The tapering feature at the ends of the celluloid to reduce the thickness for making contact, was also an old expedient in the use of celluloid articles. It is suggested, for example, in the Beals patent, No. 222,229, wherein handles of seamless celluloid on cutlery were tapered in thickness towards the ends. Such tapering at the ends of the bridge, in view of the prior art, fairly falls, I think, within the realm of the skill of the mechanic.

To offset the effect of the Day nose bridge, plaintiffs contend that the devices, Figures 4 and 5, were not used or sold, and, furthermore, that the model in evidence, made by the witness Sundstrom, departed from the Day patent; that he took the tube and put the bridge member through it in the same way as described in the Schumacher patent, and then cut away a portion in the middle to expose the bridge; that Day did not have in mind a structure like that described in the Schumacher patent. The argument on this point is plausible, but I am nevertheless persuaded that, with the Day and other patents before him, the nose bridge in question, wherein the metallic portions are exposed at the ends for making connection with the frame, was an obvious accomplishment to the skilled worker in the art. This view is supported by Sundstrom, who stated that, without having seen the Schumacher bridge, he, in the summer of 1921, put a celluloid tube over the metallic bridge and omitted the gap or space in the center portion.

My conclusion is that the claims in issue of both Clulee patents are valid, and infringed by the Shur-On Optical Company, Inc.; that the defendant Kirstein Optical Company has infringed the claims in issue of the article patent; and that the Schumacher & Boutelle patent is invalid for want of invention. A decree conforming to the foregoing may be entered, with two-thirds costs and disbursements.